[No. B237756. Second Dist., Div. Three. Nov. 19, 2012.]

ELVIRA OVIEDO, Plaintiff and Appellant, v.
WINDSOR TWELVE PROPERTIES, LLC, et al., Defendants and
Respondents.

**COUNSEL**

Law Offices of Jennifer Hughes, Jennifer Hughes; Law Offices of F. Edie Mermelstein and F. Edie Mermelstein for Plaintiff and Appellant.

Glickfeld, Fields & Jacobson and Craig M. Fields for Defendants and Respondents.

**OPINION**

CROSKEY, J.—This is an appeal by Elvira Oviedo (appellant) of an order granting a special motion to strike each cause of action in her complaint pursuant to the anti-SLAPP[1] statute, Code of Civil Procedure section 425.16.[2] Appellant contends that the trial court's granting of the special motion to strike was in error as (1) respondents' alleged illegal rent increase, the basis of her first cause of action, was not a protected activity, and (2) she established a probability of prevailing with respect to her malicious prosecution action. We agree with appellant and will reverse the order in part.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### 1. Factual History of the Parties' Dispute[4]

Appellant resides in apartment J of a 12-unit complex on S. Windsor Boulevard (the Windsor Complex) in Los Angeles, California. The Windsor Complex is owned by respondent Windsor Twelve Properties, LLC (Windsor). Respondent Marc Myers (Myers) is the managing member of

---

[1] "SLAPP" is an abbreviation for " 'strategic lawsuit against public participation.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 268, fn. 1 [46 Cal.Rptr.3d 638, 139 P.3d 30].)

[2] Code of Civil Procedure section 425.16, subdivision (b)(1), states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

All statutory references herein are to the Code of Civil Procedure unless specified otherwise.

[3] The factual and procedural background is drawn from the record, which includes a two-volume appellant's appendix in lieu of a clerk's transcript and a one-volume reporter's transcript. The facts that we recite are specifically taken from the appellant's complaint, respondents' cross-complaint and the papers filed in support of and in opposition to respondents' anti-SLAPP motion to strike appellant's complaint.

[4] Most of the facts are undisputed by the parties. To the extent that there are controverted factual claims, we note the dispute.

Windsor. Myers's family purchased the Windsor Complex in 1999 and transferred its ownership to Windsor in 2000 and Myers became the managing member at that time. Appellant was residing in apartment J prior to the Myers's family's purchase. She resides there with her young adopted daughter. Respondents raised appellant's rent on an annual basis. Each time, respondents provided notice to appellant in the month of November regarding the increase that would become effective on January 1 of the following year.[5]

On May 17, 2010, Myers posted a three-day notice to pay or vacate on appellant's door due to her failure to make a timely payment of the May 2010 rent. On May 24, 2010, Myers wrote a letter to appellant that recited that appellant had accused him of trying to intimidate her and of wanting her out of the building, which he denied. In the letter, Myers briefly mentioned the notice to quit for failure to pay rent and enclosed copies of letters that he had received from other tenants complaining about appellant's child and the noise from her apartment. He also referred to an earlier letter from November of 2009 that described "items" she had yet to fix. The letter concluded with the following sentence, "The bottom line Mandore is really two things; [sic] receiving my rent on time and the noise problem for others."

Despite referring to a letter he sent in November of 2009 that appeared to note issues regarding her daughter, Myers asserted that he first became aware that appellant had a daughter around April of 2010. Shortly after posting the three-day notice to quit for her failure to pay rent, Myers reported appellant to the Los Angeles County Department of Children and Family Services (DCFS) on July 1, 2010. Myers asserted that he received complaints from current and prospective tenants that appellant's daughter screamed for hours without comfort including late at night and that she was left unsupervised in the building courtyard near the fountain. He claims he reported appellant to the DCFS out of concern for possible liability by Windsor. Appellant argues that Myers's intentions were malicious rather than in good faith; however, she produced no evidence to support that claim. The DCFS investigation was later closed as unfounded.

Myers stated in a declaration that he met with Denice Gaucin (Gaucin), an attorney at the Law Offices of Dennis Block, around October 25, 2010, regarding problems he was having with appellant, including "her chronic late rental payments, tenant complaints about noise from her unit, and her

---

[5] Respondents included copies of all such rental increase notices from 2000 (increase effective Jan. 1, 2001) until 2009 (increase effective Jan. 1, 2010) in the record. Each notice stated that the increase fell within the guidelines of the "City Rent Control Board."

daughter being left unsupervised." His "purpose for the meeting was to determine [Windsor's] rights as [appellant's] landlord [regarding these problems] and several of the tenant's personal fears of [appellant.]" Gaucin confirmed his statements in her declaration. He described two incidents involving tenants who occupied units below appellant's who requested to be moved because of noise. Another tenant, who was set to become the new resident manager, Sabine Volel (Volel), was the focus of a DCFS investigation shortly after Myers had reported appellant and she believed appellant had reported Volel in retaliation. Myers became concerned that if he tried to evict appellant, the process would necessarily involve other tenants and he was not willing to do that. Myers informed Gaucin that he had reported appellant to DCFS during this meeting.

Appellant disputes the beginning of Gaucin's representation of Windsor and other information asserted in Myers's declaration but she failed to provide any evidence in support. Instead she points to Myers's statement that he signed the written retainer agreement on or about January 17, 2011. No copy of such agreement is in the record. Without more, this is not sufficient to negate Myers's assertion that he sought counsel in October of 2010.

Myers informed Gaucin that there was no written lease with appellant. Gaucin informed Myers that he was entitled to raise appellant's rent to market prices if appellant did not reside there prior to January 1, 1996. Myers informed her that the current resident manager, Jan Karaoglanian (Karaoglanian), who had resided in the Windsor Complex since 1991, told him appellant moved into the apartment in 1997 to live with her boyfriend, who was the original tenant.

Respondents notified appellant sometime in late 2010 or early 2011[6] that the rent for apartment J was increased from $1,283 to $1,850 per month, effective January 1, 2011. A written notice was prepared, dated October 25, 2010, and addressed to "Mandore Oviedo." In response to this notice, appellant's attorney, Jennifer Hughes (Hughes), contacted Gaucin on January 14, 2011, to discuss appellant's contention that the 44 percent increase in rent was illegal pursuant to the Rent Stabilization Ordinance of the City of Los Angeles (RSO).[7] She followed this discussion with a letter that same day noting that appellant did not receive proper service of the notice regarding increased rent. The letter also stated her reasons for asserting that the increase was illegal, including (1) that appellant had moved into the apartment in 1993

---

[6] The actual timing of service of such notice is disputed.

[7] The RSO is found in Los Angeles Municipal Code (LAMC) section 151 et seq.

with her boyfriend, Phillip Betz (Betz), and their dog, Lucky, and had resided there ever since; (2) that appellant had signed the original lease along with Betz; and (3) that even if she had not signed the original lease, the increase in rent was unlawful because she resided there prior to January 1, 1996.[8] In the letter, Hughes referred to appellant as *Elvira* Oviedo, rather than *Mandore* Oviedo.

Another of respondents' attorneys, Dennis Block (Block), replied to Hughes in a letter requesting a copy of the lease, asserting that *Mandore* Oviedo and her child were the only occupants of apartment J, and asserting that it was irrelevant whether "*Elvira* Oviedo has a lease or commenced her tenancy before the year 1996." (Italics added.) It is not clear from the record whether there were any further communications between Hughes and Block regarding his assertions. After appellant failed to pay the demanded increased rent, respondents prepared a "Three Day Notice to Pay Rent or Quit Premises," which was dated January 19, 2011, and addressed again to *Mandore* Oviedo.

In response to a claim that appellant filed with the LAHD, Joseph Plascencia (Plascencia), who represented that entity, sent a letter to Block, dated January 27, 2011, which (1) stated that the Windsor Complex was subject to the RSO; (2) stated that appellant asserted she had resided in the unit prior to 1996; and (3) requested that a copy of the lease be forwarded to LAHD within five days of the date of the letter. If respondents failed to provide a copy of the lease within that timeframe, Plascencia asserted that LAHD would proceed with what it had received to date. Block responded by letter also dated January 27, 2011, denying that respondents had a copy of the lease and stating that they had previously sought but had not received a copy of the lease from Hughes, the attorney for *Mandore* Oviedo.

From Block's prior letter to Hughes, it appeared there was some confusion as to whether respondents knew Mandore and Elvira were the same person.

---

[8] LAMC section 151.04 provides that "It shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to this chapter or regulation or orders adopted pursuant to this chapter." These increases are generally limited to one per 12-month period and by a rate no higher than an annual percentage increase established by the Los Angeles Housing Department (LAHD). However, the Costa-Hawkins Rental Housing Act (Civ. Code, § 1954.50 et seq.; CHRHA), provides "that the landlord may increase the rent by any amount to the lawful sublessee or assignee of the original occupant when the original occupant no longer resides in the unit permanently and the sublessee or assignee did not reside in the unit prior to January 1, 1996." (*Cobb v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2002) 98 Cal.App.4th 345, 351–352 [119 Cal.Rptr.2d 741]; see Civ. Code, § 1954.53, subd. (d)(2).)

Based on this letter from Block to Plascencia at LAHD, however, it appears that he understood them to be one and the same at the time it was sent. Myers stated in his declaration that he discovered that Mandore and Elvira were the same person sometime in mid-January of 2011. Myers also stated that it was around that time that his secretary, Carla Moreno, informed him that Windsor had received checks for apartment J in the names of "Mandore E. Oviedo," "Elvira A. Oviedo," "Elvira M. Oviedo," and "Mercedes Oviedo." Myers later slightly contradicted himself stating that he first learned that Mandore and Elvira were the same person after receiving a letter from LAHD in *February* of 2011.

Respondents filed an unlawful detainer action against *Mandore* Oviedo on January 31, 2011. The complaint stated it was based on appellant's failure to pay the increased rent.

Plascencia at the LAHD sent another letter to respondents through Gaucin, dated February 11, 2011. The letter recited that the evidence provided by appellant was consistent with the assertions Hughes made in her letter to Gaucin on January 14, 2011. Attached to the letter were copies of (1) two driver's licenses identifying Elvira and Mandore Oviedo, from 2008 and 1997, respectively, as the same individual; (2) federal income tax returns for Elvira Oviedo for tax years 1993, 1994, 1995, 1996, and 1998; (3) California income tax returns for tax years 1995 and 1998; (4) W-2 statements from The Oaks School for tax years 1994, 1995 and 1996; and (5) a W-2 statement from Legal Document Systems for tax year 1996. All of these documents reflected that the Windsor Complex, apartment J, was her place of residence. The letter also clarified that appellant's full legal name was Elvira Mandore Alta Garcia Oviedo, leaving no room for further misunderstanding that Elvira and Mandore were the same person. Plascencia concluded that appellant resided in the apartment prior to 1996 and that, since respondents could not produce a copy of the lease establishing otherwise, respondents increased appellant's "rent without knowledge and/or evidence who were the original tenants at the inception of tenancy." Plascencia then directed respondents to provide evidence that the unlawful detainer action had been rescinded and that appellant's rent had been restored to $1,283 a month. If no response was provided within 10 days, Plascencia stated that LAHD would process the complaint as a violation of the RSO.

Myers discussed this letter with Gaucin who, surprisingly, determined the evidence was not conclusive regarding when appellant first occupied apartment J since no one had produced a written lease. Myers met, *for the first*

*time*, with Matthew Hogan (Hogan), the attorney who was to handle the unlawful detainer action, on February 25, 2011—just four days prior to the date on which trial was set to begin. Hogan admitted that he had not been involved in the lawsuit prior to that meeting other than to review some files. Myers informed Hogan that his primary witness, Karaoglanian, was very ill with cancer and may not be able to testify. It appears no attempt had ever been made to obtain a declaration from Karaoglanian (at least one that was mentioned or included in the record before us).

The unlawful detainer action was set to be heard on March 1, 2011. The parties met in the cafeteria prior to trial that morning, at which time appellant presented respondents with an evidence binder including 14 exhibits. Myers had learned sometime over the weekend that Karaoglanian was too ill to attend trial because he had had surgery in early February. After the meeting, respondents voluntarily filed a request for dismissal of the unlawful detainer action without prejudice. Respondents assert that they dismissed the action because (1) it became apparent that Karaoglanian was too ill to testify; (2) respondents did not wish to incur additional legal fees associated with a trial; and (3) appellant was contesting whether the two notices sent were properly served. Appellant disputes that these were the reasons behind the voluntary dismissal and instead argues that it was due to their not having a legally tenable claim.

LAHD sent a letter to appellant dated March 22, 2011, confirming that her case would be submitted for closure. In the letter, Plascencia confirmed his understanding of the facts including that the unlawful detainer action had been dismissed, that her rent was restored to $1,283 per month but that a notice to increase her rent by 2.96 percent effective April 1, 2011, had been received, and that she did not wish to pursue the allegation that respondents had failed to post the RSO information.

### 2. *Procedural History of the Present Action*

Appellant filed a complaint for damages against respondents on June 20, 2011. The complaint was verified and included five causes of action for (1) a violation of the RSO; (2) malicious prosecution; (3) abuse of process; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

Respondents filed both an answer to appellant's complaint and a cross-complaint against appellant on August 3, 2011. The cross-complaint included

four causes of action: (1) nuisance; (2) negligence; (3) intentional interference with contract; and (4) negligent interference with contract. Respondents alleged that appellant was a noisy tenant who annoyed and intimidated respondents' other tenants over the two- to three-year period preceding the filing of the cross-complaint. Respondents later filed an amended answer on August 18, 2011. Appellant answered the cross-complaint on August 31, 2011.

Respondents filed a request for judicial notice of the filings made in the unlawful detainer action, including respondents' voluntary request for dismissal. There is nothing in the record to show whether the trial court granted or denied respondents' request. Additionally, respondents also attached copies of these very same documents to Myer's, Gaucin's and Hogan's declarations filed with their anti-SLAPP motion on September 1, 2011. The anti-SLAPP motion sought to strike each of appellant's causes of action on the basis that all of them stemmed from the unlawful detainer action filed earlier that year.

Appellant filed her opposition to respondents' anti-SLAPP motion on September 19, 2011. Attached to this opposition were declarations of Hughes, Teddi Chichester (Chichester) and Marion Sheppard (Sheppard). Chichester, a former tenant, resided at the Windsor Complex between 1988 and 1995, when it was owned by the Boncas prior to Windsor. He stated that he knew appellant on a "friendly neighbors" basis during that time and became reacquainted with her in 2008. Sheppard, a current and long-term tenant of more than 35 years, stated that she recalled that appellant had moved in with her boyfriend and dog, all at the same time. Sheppard's declaration did not state, however, *when* appellant moved in.

Respondents filed their reply on September 22, 2011. They attached an additional declaration from Hogan as support. Hogan mistakenly attached a copy of appellant's trial exhibit list and described it as his own.

The hearing on the anti-SLAPP motion was held on September 29, 2011. The trial court found that all of appellant's claims were based on respondents' "actions leading up to its attempted eviction of [appellant] from her apartment" and thus were protected activities. Without discussion, it then found that appellant had failed to establish a probability of success on the merits. Based on these findings, the trial court dismissed appellant's complaint and an order of dismissal was entered on that same date.

Appellant filed a timely appeal. An order granting or denying a special motion to strike under section 425.16, the anti-SLAPP statute, is appealable pursuant to section 904.1, subdivision (a)(13).

## CONTENTIONS

Appellant contends that the trial court's order granting the special motion to strike was erroneous with respect to her first cause of action for an RSO violation as respondents' alleged illegal rent increase was not a protected activity, and, with respect to her second cause of action for malicious prosecution, she argues that she had established a probability of prevailing. She also contends that the trial court erred in granting the special motion to strike with respect to her third, fourth and fifth causes of action. However, appellant provides neither argument nor citation of authority in support of this contention. We treat those causes of action as abandoned and have no need to discuss them further.[9]

## DISCUSSION

1. *The Nature of a Section 425.16 Motion and the Appropriate Standard of Review*

"The Legislature [found and declared] that there [had] been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." (§ 425.16, subd. (a).) These suits have been referred to as " 'strategic lawsuit against public participation' " or "SLAPP" suits. (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 268, fn. 1.) In seeking to prevent the abuse of the judicial process through SLAPP suits, the Legislature enacted a specific procedure, found in section 425.16, by which defendants may dispose of such suits at the pleading stage to avoid the costs and delays of litigation. (*Soukup,* at p. 278.) This procedure is referred to as an anti-SLAPP motion. " '[T]he point of the anti-SLAPP statute is that you have a right *not* to be dragged through the courts because you exercised your constitutional rights.' " (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 193 [25 Cal.Rptr.3d 298, 106 P.3d 958].)

---

[9] Issues as to which an appellant provides no argument or discussion are deemed waived and are properly disregarded. (*Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012, 1021 [261 Cal.Rptr. 875].)

■ "A section 425.16 special motion to strike involves a two-step analysis. This includes determining first whether the plaintiff's cause of action arose from an act taken by the defendant in furtherance of the defendant's right of petition or free speech, and if it did so arise, then determining whether the plaintiff has shown a probability of prevailing on the claim in the complaint. The defendant bears the burden on the first question, and the plaintiff on the second. If the court determines the cause of action did not arise from such protected activity, the motion to strike must be denied. [Citations.]" (*Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, 1316–1317 [135 Cal.Rptr.2d 903].)

" 'As is true with summary judgment motions, the issues in an anti-SLAPP motion are framed by the pleadings. [Citation.] The plaintiff may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.[10] [Citation.] In reviewing the plaintiff's evidence, the court does not weigh it; rather, it simply determines whether the plaintiff has made a prima facie showing of facts necessary to establish its claim at trial. [Citation.]' [Citation.]" (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1017 [85 Cal.Rptr.3d 838].) "When reviewing a ruling on a defendant's section 425.16 special motion to strike a complaint, we employ our independent judgment." (*Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra*, 109 Cal.App.4th at p. 1317.)

### 2. *Whether Respondents' Actions Were Protected Activities*

Respondents assert that both the first and second causes of action in appellant's complaint arise from the protected activity of filing an unlawful detainer action and, thus, the anti-SLAPP statute applies. We disagree in part.

### a. *Appellant's First Cause of Action: Violation of the RSO*

Appellant's first cause of action is for a violation of the RSO, which provides that "[i]t shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent . . . ." (LAMC, § 151.04.A.) The

---

[10] "*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289–1290 [74 Cal.Rptr.3d 873], does state to the contrary. We note that *Salma* has not been followed by any other published decision, and that every other case holds to the contrary. We disagree with *Salma*, as apparently does the leading practical treatise: 'Comment: The anti-SLAPP statute should be interpreted to allow the court to consider the "pleadings" in *determining the nature of the* "*cause of action*"—i.e., whether the anti-SLAPP statute applies. But affidavits stating evidentiary facts should be required to oppose the motion (because pleadings are supposed to allege ultimate facts, not evidentiary facts).' (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 7.1021.1, p. 7(II)-48 (rev. # 1, 2011), boldface omitted.)" (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 474, fn. 8 [137 Cal.Rptr.3d 455].)

complaint alleged: "The maximum allowable annual rent increase in Los Angeles County as of January 10, 2011 was three percent (3%). [¶] 34. On January 1, 2011, Defendants unlawfully increased Plaintiff's rent by approximately forty-four percent (44%), from $1,283 to 1,850, in violation of L.A.M.C. § 151.04, [sic] and § 151.06.D, which provides [sic] that rents may only be increased once every twelve (12) months in an amount based on the Consumer Price Index. [¶] 35. Defendants demanded excess rent of approximately $567 per month for the months of January, February, and March, and are liable for treble damages estimated at $5,103 (3 months excess rent multiplied by 3)." (See LAMC, § 151.10.)

As we described above, "section 425.16 addresses itself to causes of action that *arise from* acts taken in furtherance of a defendant's right of petition or free speech in connection with a public issue. Our Supreme Court has made it clear that a plaintiff's cause of action does not necessarily *arise from* a defendant's section 425.16 protected activity merely because the plaintiff's suit was filed *after* the defendant engaged in that activity. [Citation.] 'The anti-SLAPP statute cannot be read to mean that "any claim asserted in an action which arguably was filed in retaliation for the exercise of speech or petition rights falls under section 425.16, whether or not the claim is *based on* conduct in exercise of those rights." [Citations.]' [Citation.] The Supreme Court said that the phrase 'arising from' in section 425.16 should not be construed as meaning 'in response to.' [Citation.] 'In short, the statutory phrase "cause of action . . . arising from" means simply that the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech. [Citation.]' [Citation.] A cause of action may be 'triggered by protected activity' without necessarily arising from such protected activity. [Citation.]" (*Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th at pp. 1317–1318.)

Our review of the record convinces us that respondents have failed to meet their burden of showing that the basis of this cause of action is an act in furtherance of their constitutional right to petition or free speech. Respondents assert that the 60-day notice of intent to increase rent, the three-day notice to pay or quit, and the unlawful detainer action all are protected petitioning activities triggering the anti-SLAPP statute. What respondents have failed to understand, however, is that appellant's first cause of action is based, not on the unlawful detainer action and prior communications, but on respondent's alleged violation of the RSO. In other words, respondents "were not sued for their conduct in exercising . . . constitutional rights" but for the

underlying conduct of illegally raising appellant's rent. (*Santa Monica Rent Control Bd. v. Pearl Street, LLC, supra,* 109 Cal.App.4th at p. 1318.) Respondents have not presented any authority supporting the assertion that their allegedly illegal raising of appellant's rent is an act in furtherance of their rights of petition or free speech.

█ "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) As respondents have not met their threshold burden of showing that appellant's first cause of action was based on a protected activity covered by the anti-SLAPP statute, the trial court erred in finding otherwise. Because the claim does not involve protected speech or petitioning activity, we need not reach whether appellant established a probability of prevailing.

b. *Appellant's Second Cause of Action: Malicious Prosecution*

Appellant's second cause of action is for malicious prosecution and specifically attacks respondents' filing of the unlawful detainer action. The complaint states, "Defendant Windsor Twelve Properties filed an Unlawful Detainer against Plaintiff after she refused to pay an unlawful rent increase that exceeded the lawful rent by an estimated forty-four percent (44%). The Unlawful Detainer was brought against Plaintiff under her nickname and not her lawful name. The unlawful detainer [*sic*] was brought under the pretext that Plaintiff was a new tenant even though she had lived there for 18 years. Myers and the Resident Manager had personally been acquainted with Plaintiff herein for approximately 10 years and 18 years, respectively. The Unlawful Detainer was dismissed without prejudice on the day of trial, in apparent recognition that the case lacked merit."

█ Appellant does not argue against the conclusion that respondents' unlawful detainer action satisfied their threshold burden under the anti-SLAPP statute. " 'The prosecution of an unlawful detainer action indisputably is [a] protected activity within the meaning of section 425.16.' [Citations.]" (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1479 [74 Cal.Rptr.3d 1].) However, "[a]s noted, no cause of action qualifies as a SLAPP merely because the defendant's actions conceptually fall within the ambit of the statute's initial prong." (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 95.) Despite such a threshold showing, the plaintiff may defeat an anti-SLAPP motion by establishing a probability of prevailing on the claim.

(*Ibid.*) The probability of prevailing standard is satisfied when the party opposing an anti-SLAPP motion presents admissible evidence demonstrating the existence of a prima facie case or, put another way, the existence of disputed material facts. (*Paiva v. Nichols, supra*, 168 Cal.App.4th at p. 1017.)

### 3. *Whether a Probability of Prevailing Was Shown*

■ Although the litigation privilege in Civil Code section 47, subdivision (b), generally bars claims based on a landlord's delivery of a three-day notice to quit immediately followed by the filing of an unlawful detainer action (*Bisno v. Douglas Emmett Realty Fund 1988* (2009) 174 Cal.App.4th 1534, 1552 [95 Cal.Rptr.3d 492]), our Supreme Court has declined to extend such privilege to malicious prosecution actions based thereon (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242 [63 Cal.Rptr.3d 398, 163 P.3d 89] [citing *Albertson v. Raboff* (1956) 46 Cal.2d 375, 382 [295 P.2d 405]]). Thus, to prevail on her claim for malicious prosecution, appellant must show that the unlawful detainer action was (1) terminated in her favor; (2) begun with malice; and (3) prosecuted without probable cause. (*Bisno v. Douglas Emmett Realty Fund 1988, supra*, 174 Cal.App.4th at p. 1544.) To satisfy this showing, appellant may not rely solely on her verified complaint. (*Paiva v. Nichols, supra*, 168 Cal.App.4th at pp. 1016–1017.) Instead, she must present competent admissible evidence on each of the three elements of a malicious prosecution cause of action. (*Ibid.*)

### a. *Favorable Termination*

■ Appellant " 'must plead and prove that the prior judicial proceeding[, here the unlawful detainer action,] terminated in [her] favor.' [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1399 [69 Cal.Rptr.3d 561].) " ' "[W]hen the underlying action is terminated in some manner other than by a judgment on the merits, the court examines the record 'to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed.' " [Citations.]' [Citation.]" (*Ibid.*) "A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citation.]" (*Id.*, at p. 1400.) "This is because ' "[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of [appellant]]. . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." ' [Citation.]" (*Ibid.*)

The parties do not dispute that respondents filed a request for and received a voluntary dismissal without prejudice in the unlawful detainer action. Thus, it is possible to infer that the action was terminated favorably to appellant. Appellant's position is further supported by evidence, which includes: (1) tax

records dating back to 1993 showing her address as being that of apartment J; (2) declarations of one former resident of the complex stating that she resided there prior to 1996 and another current resident stating she moved in at the same time as her boyfriend, not a few years later, as claimed by respondents; (3) the February 11, 2011 letter from LAHD concluding that, barring receipt of any exculpatory evidence from respondents, the rent increase on which the unlawful detainer action was based was in violation of the RSO; and (4) statements by Myers on the day that the action was dismissed that appellant also had "some form of work record for [appellant] that indicated that she was a tenant of Apartment J prior to January 1, 1996."

Respondents argue that the action was not terminated in appellant's favor and presented declarations of Myers and Hogan to support this assertion. These declarations stated the action was terminated because (1) it became apparent that respondents' primary witness, Karaoglanian, was too ill to testify; (2) respondents did not wish to incur additional legal fees associated with trial; and (3) appellant was contesting that the two notices sent were not properly served. Respondents presented no further evidence supporting their argument, such as actual cost estimates of trial or a declaration from Karaoglanian, and none of this evidence is sufficient to defeat appellant's showing as a matter of law. Instead, it merely raises a conflict as to the reasons behind the termination. " 'Should a conflict arise as to the circumstances of the termination, the determination of the reasons underlying the dismissal is a question of fact. [Citation.]' [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann, supra,* 157 Cal.App.4th at p. 1399.) As a result, appellant has made a prima facie showing of a favorable termination of the unlawful detainer action in her favor.

### b. *Malice*

"The malice element of the malicious prosecution tort goes to [respondents'] subjective intent in initiating the prior action. [Citation.] For purposes of a malicious prosecution claim, malice 'is not limited to actual hostility or ill will toward [appellant]. Rather, malice is present when proceedings are instituted primarily for an improper purpose.' [Citation.] 'Suits with the hallmark of an improper purpose' include, but are not necessarily limited to, 'those in which: " '. . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim.' " ' [Citation.] [¶] Evidence tending to show that the defendants did not subjectively believe that the action was tenable is relevant

to whether an action was instituted or maintained with malice. [Citation.]" (*Sycamore Ridge Apartments LLC v. Naumann, supra,* 157 Cal.App.4th at pp. 1407–1408.)

The record contains some evidence that would support a reasonable inference by a trier of fact that Myers was hostile towards appellant. In May of 2010, Myers posted a three-day notice to quit because appellant was late with her rent. In a subsequent letter he admitted that appellant had accused him of trying to intimidate her. He also admitted to having given her a list of "items" he expected her to fix in a letter months earlier. After becoming aware that appellant had adopted a daughter, he reported her to DCFS and an investigation was started and later closed as unfounded. He admitted that when he met with his attorneys that he wanted to evict appellant because of her late payments of rent, noise from her unit and her daughter's being left unsupervised but that he did not want to involve other tenants. He stated that he wanted to know Windsor's rights as landlord and did not state that he wished to simply raise the rent to a market rate, although that is ultimately the approach he chose to take. Additionally, his attorney admitted in open court that Myers specifically raised appellant's rent with the intent to sue her.

Respondents deny all of the allegations of malice. But the threshold here is low and none of the evidence put forth by respondents negates the evidence in appellant's favor as a matter of law. As our summary of the record at the outset of this opinion shows, the tone of the relationship between appellant and Myers was hostile and divisive. "While these circumstances do not conclusively establish malice, they are sufficient to allow the issue to go to the trier of fact for resolution." (*Bergman v. Drum* (2005) 129 Cal.App.4th 11, 25 [28 Cal.Rptr.3d 112].) As a result, we conclude that appellant has met her burden with respect to this element.

### c. *Probable Cause*

█ "The probable cause element is objective, not subjective, with the trial court required to determine whether, on the basis of the facts known to [respondents], it was legally tenable to bring the prior action. The benchmark for legal tenability is whether any reasonable attorney would have thought the claim was tenable. [Citation.] █ Good faith reliance on the advice of counsel, after truthful disclosure of all the relevant facts, is a complete defense to a malicious prosecution claim. [Citation.]" (*Bisno v. Douglas Emmett Realty Fund 1988, supra,* 174 Cal.App.4th at p. 1544.) "However, if the initiator acts in bad faith or withholds from counsel facts he knew or should have known would defeat a cause of action otherwise appearing from the information supplied, that defense fails. [Citations.]" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 53–54 [118 Cal.Rptr. 184, 529 P.2d 608].)

Appellant does not dispute that respondents were represented by counsel in the unlawful detainer action; instead she asserts that respondents acted in bad faith in bringing the unlawful detainer action. As noted previously, the record contains at least some evidence that Myers may have born appellant some ill will and wished to evict her. In his declaration, he admitted that when he met with his attorneys he wanted to evict appellant because of her late payments of rent, noise from her unit and her daughter's being left unsupervised but that he did not want to involve other tenants. Once Gaucin explained that Windsor could raise appellant's rent to a rate substantially higher than the current rent if appellant had not resided in the apartment prior to January 1, 1996, Myers asserted, apparently without investigation, that he wished to proceed with that route based on his allegedly being told by Karaoglanian that appellant moved into the apartment in 1997. Nowhere in his declaration does Myers assert that he confirmed his understanding of appellant's move-in date with Karaoglanian during the five-month period between the notice of rent increase and the date of trial in the unlawful detainer action. At no time did Myers or his counsel seek to obtain a declaration from Karaoglanian prior to the latter's death. Myers admitted that neither he nor Windsor had any lease establishing when appellant moved into the apartment. But despite not having any solid information supporting his decision, Myers moved forward with raising appellant's rent by 44 percent, expecting that she would not pay it, allowing him to evict her. Myers's attorney even admitted in open court that Myers raised appellant's rent with the intent to sue and evict her, which is inconsistent with a good faith attempt to raise her rent to market rates. This evidence is sufficient to meet the minimal requirements of establishing that respondents lacked probable cause in initiating the unlawful detainer action. As a result, appellant has met her burden.

Based on the foregoing, we conclude that appellant has sufficiently shown that her malicious prosecution claim against respondents has the "minimal merit" necessary to defeat their anti-SLAPP motion. Therefore, we find that the trial court erred in granting it.

## DISPOSITION

The order of dismissal is reversed with respect to appellant's first cause of action for a violation of the RSO and with respect to her second cause of action for malicious prosecution. In all other respects, the order is affirmed. The case is remanded for further proceedings consistent with the views expressed herein. The trial court shall vacate the order granting respondents' motion for attorneys' fees, pursuant to section 425.16, subdivision (c)(1),

without prejudice to the filing of a new motion for such fees by respondents, thus permitting the trial court to reconsider the issue in light of the views expressed in this opinion. The parties shall bear their own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied December 6, 2012, and on November 27, 2012, and December 18, 2012, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied April 10, 2013, S208196.