Filed 4/29/14  Sqrow v. A.V.M.G.H. Five CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| ALFREDA SQROW et al.,<br><br>    Plaintiffs and Respondents,<br><br>v.<br><br>A.V.M.G.H. FIVE, THE RANCH LIMITED PARTNERSHIP,<br><br>    Defendant and Appellant. | 2d Civil No. B251406<br>(Super. Ct. No. 56-2013-00437970-CU-BC-VTA)<br>(Ventura County) |

Defendant A.V.M.G.H. Five, the Ranch Limited Partnership ("AVMGH"), a mobile home park owner, appeals an order denying its anti-SLAPP (strategic lawsuit against public participation) motion.  (Code Civ. Proc., § 425.16.)[1]

Plaintiffs Alfreda Sqrow, Frank Sqrow, Beryl Baldwin and Gayle Heninger are mobile home park residents ("Residents") who pay rent to AVMGH.  Residents filed a class action for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, intentional and negligent infliction of emotional distress against AVMGH.  They claim AVMGH breached its promise that it would not impose substantial rent increases on very low income seniors.

We conclude, among other things, that AVMGH did not meet its burden on the first prong of its anti-SLAPP motion to show that Residents' action arose from an act

---

[1] All statutory references are to the Code of Civil Procedure.

in furtherance of its "right of petition." (§ 425.16, subd. (b)(1).) AVMGH's protected act of petitioning the City of Thousand Oaks ("City") for a rent increase was independent from its subsequent nonprotected act of raising rents in violation of an alleged agreement with Residents. We affirm.

FACTS

Residents are "very low income" senior citizens on "fixed incomes" who own mobile homes and rent spaces in AVMGH's mobile home park (park) in the City.

In 1974, the City approved a "Zone Change Application" and its Planning Commission approved a "development permit" to allow the area upon which the current park sits to become a "low-income mobile home park." In 1980, the City passed a rent control ordinance for mobile home parks, but that ordinance did not apply to this park.

In 1984, Andrew Hohn, the owner of the park, "reached an agreement" with the City regarding a "formula by which rents could be increased" at the park. That agreement was "codified" in Resolution 84-037. It provided, among other things, that if the park did not meet a designated "Net Profit Target Figure," rent increases were permissible within a maximum limit of 4 percent a year. For almost 30 years, the park's space rental increases "were governed" by the limits set forth in that resolution.

Residents claim that when they purchased their mobile homes at the park they relied on the park owner's representations that "space rents would not increase substantially" and "never be raised more than a few dollars." They claim that the park's representatives made these representations continuously from 1977 to 2010.

Hohn transferred title to the park to AVMGH. Residents claim AVMGH as "a successor-in-interest . . . is bound by" the park's prior representations to Residents.

Residents allege that in June 2010, AVMGH deviated from the rent increase limitations the park had used for decades required by Resolution 84-037. Instead, it applied for a larger rent increase under the City's Rent Stabilization Ordinance (RSO). In response to AVMGH's application, the City ultimately passed a new ordinance (1559-NS), which authorized "a rent increase of $191.00 per month." Residents claim this was "more than double the existing amount of rent that any resident was paying."

2

The ordinance did not impose a rent increase on Residents. It gave permission for AVMGH to raise the rents if it elected to do so.

On January 12, 2011, the park's resident manager scheduled a meeting with Residents at the park regarding the park's rents. Residents claim the park's representative promised that: 1) "the Owner would not raise the rent for very-low income individuals," and 2) the park sought an increase in rents "for the ten or more empty coaches in the Park" and not for "residents who were living on fixed incomes."

In July 2011, AVMGH notified Residents that their monthly rents would be increased by $191.95 and the increase would be phased in "over a period of seven years." Residents viewed this as an "exorbitant rent" increase contrary to the promises made by the park's representatives. They said they could not afford to move or to pay the increased rent.

Residents filed a class action against AVMGH, stating multiple causes of action. They alleged, among other things, that: 1) the rent increases constituted a breach of contract based on prior oral and written promises made to Residents by the park's representatives, and 2) AVMGH breached the implied covenant of good faith and fair dealing by raising the rents contrary to those "promises." Residents also alleged promissory estoppel, because when the park "made [the] promises to Plaintiffs . . . , it knew, or reasonably should have known, that Plaintiffs . . . would rely on its promises to keep any rent increases . . . to a minimum consistent so the Park would always be affordable to low income seniors . . . ." They alleged causes of action for intentional and negligent infliction of emotional distress based on the violation of the park owner's "repeated promises to Plaintiffs."

AVMGH filed a motion to strike under the anti-SLAPP statute (§ 425.16.) It claimed "each and every cause of action in the Complaint arises from an act in furtherance of AVMGH's constitutional rights to petition or free speech in connection with a public issue . . . ." It claimed that the complaint showed that it "lawfully exercised its first amendment right in June 2010 to petition the City of Thousand Oaks . . . for a constitutional just and reasonable return rent increase" under "the City's Rent

3

Stabilization Ordinance ('RSO')."  It said, "According to the Complaint, AVMGH's petitioning activity allegedly 'breached' AVMGH['s] alleged 'representations' to Plaintiffs that the Ranch would 'always' be governed by a rent increase formula applied by the City in 1984 ('Resolution 84-037') rather than by the City's RSO and that space rent increases would . . . 'never' be 'substantial.'"  It said, "The Complaint on its face admits that AVMGH obtained such rent increase from the City as of May 24, 2011."

In their opposition, Residents claimed AVMGH mischaracterized the underlying substance of their claims:  "The gravamen of Plaintiffs' five causes of action is illegal rent increases, not Defendant's exercise of protected rights."  They said, "Plaintiffs' claims are based on *the imposition of rent increases* on residents of [the park] . . . , starting in *October 2011*, in violation of:  (i) Defendant's express oral and written promises not to substantially increase rents; (ii) the rental agreements between the parties; and (iii) Resolution 84-037 . . . .  Plaintiff's claims are *not* based on Defendant's act of petitioning for a rent increase . . . ."

The trial court denied the motion.  It said, "[T]he conduct which forms the bases for plaintiffs' causes of action is the act of raising the rates after promising that they would not.  That conduct was not 'in furtherance' of defendant's right of petition."  The court noted that the application to the City for the rent increase was a protected act, but it was separate from AVMGH's ultimate decision to increase rents.  After obtaining permission from the City, it had the option not to raise rents, or even to lower them.  The gravamen of the case involved AVMGH's act of raising the rents in violation of its promises to Residents.

## DISCUSSION

### *The First Anti-SLAPP Prong*

AVMGH contends the trial court erred by denying its anti-SLAPP motion because Residents' action arose from its protected activity of petitioning the City for permission to increase park rents.

Residents claim their action was not based on AVMGH's petitioning activity.  Instead, it concerned AVMGH's alleged acts of:  1) making false promises to

4

Residents about not raising the rents, 2) causing them to rely on these representations, and then 3) increasing their rents to their detriment. Residents contend such conduct is not protected petitioning activity under the anti-SLAPP statute.

Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

There are two prongs to a motion to strike under section 425.16. (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1306.) "[T]he party challenging the lawsuit has the threshold burden to show that the cause of action arises from an act in furtherance of the right of petition or free speech." (*Ibid.*) "Once that burden is met, the burden shifts to the [plaintiff] to demonstrate a probability of prevailing on the claim." (*Ibid.*) Where the defendant does not meet the burden to establish the first prong, the motion must be denied. (*Ibid.*)

*A Lawsuit Arising from a Protected Act?*

In deciding whether the lawsuit arises from a protected act, we look not only to the pleadings, but also to the underlying "gravamen or principal thrust" of the action. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.) The anti-SLAPP statute does not apply where the complaint refers to protected activity that is "incidental to a cause of action based essentially on nonprotected activity." (*Martinez v. Metabolife Internat., Inc.* (2003) 113 Cal.App.4th 181, 188.) This appeal "is subject to our independent de novo review." (*Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1397.)

AVMGH contends Residents' action was subject to a motion to strike because a park owner must initially petition the City for approval of a mobile home park rent increase. It correctly notes that such petitioning activity is protected conduct under the anti-SLAPP statute.

5

But "'a plaintiff's cause of action does not necessarily *arise from* a defendant's section 425.16 protected activity merely because the plaintiff's suit was filed *after* the defendant engaged in that activity.'" (*Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110.) "'A cause of action may be "triggered by protected activity" without necessarily arising from such protected activity.'" (*Ibid.*) "'"[T]he defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech."'" (*Ibid.*)

In *Oviedo*, landlords increased a tenant's rent. The tenant claimed the increase violated a county RSO. The landlords served a three-day notice to pay rent or quit. The tenant did not pay the increased amount. The landlords filed an unlawful detainer action to evict the tenant. They eventually dismissed that action. The tenant filed an action against the landlords. The first cause of action was for "a violation of the RSO." (*Ovideo v. Windsor Twelve Properties, LLC*, *supra*, 212 Cal.App.4th at p. 106.) The trial court granted an anti-SLAPP motion finding the RSO cause of action was based on protected "actions leading up to [the] attempted eviction" of the tenant. (*Id.* at p. 108.)

The Court of Appeal reversed. It said the appellant's "cause of action is based, not on the unlawful detainer action and prior communications, but on [the landlords'] alleged violation of the RSO. In other words, [the landlords] 'were not sued for their conduct in exercising . . . constitutional rights' but for *the underlying conduct of illegally raising appellant's rent*." (*Ovideo v. Windsor Twelve Properties, LLC*, *supra*, 212 Cal.App.4th at pp. 110-111, italics added.) "Respondents have not presented any authority supporting the assertion that their allegedly illegal raising of appellant's rent is an act in furtherance of their rights of petition or free speech." (*Id.* at p. 111.)

Other cases have also distinguished between the protected act of petitioning a government agency and the liability for the unprotected act of charging excessive, unlawful or improper rents. In *Santa Monica Rent Control Bd. v. Pearl Street, LLC* (2003) 109 Cal.App.4th 1308, the Board filed a lawsuit alleging landlords were attempting to evade rent control statutes. The trial court granted the defendants' anti-SLAPP motion. The Court of Appeal reversed. The landlords' filing of papers with the

6

Board was an arguably protected activity. But the anti-SLAPP statute did not apply because the "*suit is based on the Board's claim that defendants are charging an illegal rent . . . .*" (*Id*. at p. 1318.) Such conduct was not "an act in furtherance of the right of petition or free speech." (*Ibid.*)

The present action is similar to the above cases. It involves a challenge to the alleged invalidity of a rent increase in violation of promises made to Residents. The trial court evaluated the anti-SLAPP motion consistent with the analysis in the *Oviedo* and *Santa Monica Rent Control Board* cases. It found AVMGH's "conduct in applying for authorization to increase rental rates within the park was protected petitioning activity." But it distinguished between that activity and the unprotected conduct Residents challenged. It said, "[T]he conduct which forms the bases for plaintiffs' causes of action is *the act of raising the rates after promising that they would not*. That conduct was not 'in furtherance' of [AVMGH's] right of petition." (Italics added.) This action was not filed to chill AVMGH's right of access to the government or to seek liability for its petition to the City.

*Was the Petitioning Act Severable from the Rent Increase?*

AVMGH contends: 1) "the rent increase could not have been brought about without" its petition to the City, and 2) that protected act is so intertwined with the rent increase Residents are challenging that the trial court improperly separated the petitioning act from the rent increase. We disagree.

AVMGH's petition for authority from the City to raise rents was a separate act from its act of increasing the rents. At the hearing on its motion, the trial court asked whether AVMGH had to raise the rents after obtaining permission from the City for a rent increase. AVMGH's trial counsel replied, "They do not have to increase the rents." AVMGH was therefore free to decide not to exercise the authority to increase rents if doing so would violate an agreement with Residents.

AVMGH claims a petition to the City is required for a mobile home park rent increase. But that factor does not change the result. (*Wang v. Wal-Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 794, 809.) In *Wang*, the plaintiffs sued for

7

breach of contract and fraud involving a sale of two parcels of their real estate for a commercial development. They alleged the defendants agreed to provide street access for the plaintiffs' remaining properties in the development plans that had to be approved by the city. The city approved the defendants' plans, but they included a change that deprived the plaintiffs of street access. The defendants filed an anti-SLAPP motion claiming city approval was required for the project and the action arose from that protected petitioning act of submitting the plans to the city. The Court of Appeal disagreed and held the action arose from the breach of the agreement and not from the defendants' petition to the city for approval of the plans. The causes of action referred to the "applications for City development permits" but that did not convert them "into liability claims that were based principally upon protected speech or conduct." (*Id.* at p. 794.) Here, as in *Wang*, the act of breaching the alleged agreement not to raise the rents was severable from the act of petitioning the City.

But even where the lawsuit is closely intertwined with facts involving a protected activity, courts may properly distinguish between the "'liability that is *based on* speech or petitioning activity'" and liability based on contractual causes of action. (*City of Alhambra v. D'Ausilio*, *supra*, 193 Cal.App.4th at p. 1307.) In *City of Alhambra*, the city sued a former city employee for breach of contract for violating an agreement that prohibited him from participating in city firefighter's union activities against the city. The defendant subsequently engaged in a union demonstration wearing his union shirt. He claimed the action arose from his protected activities of free speech which fell within the anti-SLAPP statute. The Court of Appeal disagreed. It distinguished between the protected activity and the contract claim *upon which liability* was sought. It said, "The City did not sue appellant because he engaged in protected speech; the City sued him because it believed he breached a contract which prevented him from engaging in certain speech-related conduct . . . ." (*Id.* at p. 1308.) Here, as in *City of Alhambra*, Residents believed AVMGH breached a contract.

Residents also sought liability for tortious conduct based on misleading representations about rent increases. Those alleged misrepresentations are not protected

8

activity and are distinguishable from the petition to the City. In *Gallimore v. State Farm Fire & Casualty Ins. Co.*, *supra*, 102 Cal.App.4th 1388, the plaintiff sued an insurance company for misleading policyholders. He relied on reports the company submitted to the Department of Insurance. The company claimed its communications with the Department of Insurance were protected involving its "right to freely communicate with its regulatory agency." (*Id*. at p. 1399.) It claimed it was entitled to anti-SLAPP relief. The Court of Appeal disagreed. It had no trouble distinguishing between protected conduct and the plaintiff's liability claim. It said, "Plaintiff seeks no relief from State Farm for its communicative acts, but rather for its alleged mistreatment of policyholders . . . ." (*Ibid.*)

AVMGH suggests a direct or indirect challenge to a defendant's petitioning act necessarily triggers the first prong of the anti-SLAPP statute. But that claim was rejected in a case where the goal of the petitioning act was allegedly unprotected and instituted to violate the vested rights of tenants. In *Marlin v. Aimco Venezia, LLC* (2007) 154 Cal.App.4th 154, a landlord gave notice to the city under the Ellis Act that it was withdrawing units from rent control. It served notices to the tenants as a step toward eviction proceedings. Tenants filed an action *directly* challenging the validity of the petitioning act--the Ellis Act notices. The Court of Appeal ruled the anti-SLAPP statute did not apply. It rejected the claim that the Ellis Act notices were protected. It said, "Clearly, the cause of plaintiffs' complaint was defendants' allegedly wrongful reliance on the Ellis Act as their authority for terminating plaintiffs' tenancy. Terminating a tenancy or removing a property from the rental market are not activities taken in furtherance of the constitutional rights of petition or free speech." (*Id*. at pp. 160-161.)

*Was the Rent Increase Protected Commercial Speech?*

AVMGH contends its act of imposing the rent increase on Residents was commercial speech which is constitutionally protected.

Residents claim AVMGH's commercial speech issue was not raised in the trial court. This argument was not presented as a ground for relief in the anti-SLAPP motion. Issues raised for the first time on appeal are normally forfeited where the

9

appellant failed to give the trial court an opportunity to consider them. (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65 Cal.App.4th 1422, 1433.) But even on the merits, the result is the same.

AVMGH initially points to the right to make reasonable returns on investments. (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 771.) Residents claim this due process right is not implicated in an anti-SLAPP motion based on the First Amendment. (§ 425.16.) But even if it is, they claim they are not precluding AVMGH from making a return on its investment. They are only seeking compliance with AVMGH's agreement to limit the increases to the specified amounts and increase formula (Resolution 84-037) upon which they relied.

AVMGH claims rent increases are "protected commercial speech." But the issue is not whether commercial transactions involving rent increases are generally protected, it is whether the conduct alleged as the gravamen of Residents' action is protected.

Commercial speech is "[e]xpression concerning purely commercial transactions." (*Ohralik v. Ohio State Bar Assn.* (1978) 436 U.S. 447, 455.) It does not contain the elements of political expression and ideas that trigger the higher scrutiny involved in traditional First Amendment cases. (*Id.* at p. 456; *Texas v. Johnson* (1989) 491 U.S. 397, 404-405; *In re Joshua H.* (1993) 13 Cal.App.4th 1734, 1747.) Consequently, courts "have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression." (*Ohralik*, at p. 456.)

First Amendment protection for commercial speech does not apply to conduct that is "misleading." (*Central Hudson Gas & Electric Corp. v. Public Service Comm'n* (1980) 447 U.S. 557, 566.) In commercial speech and traditional First Amendment speech cases, the tortious conduct of making false or misleading representations is not protected activity. (*Gertz v. Robert Welch, Inc.* (1974) 418 U.S. 323, 340 ["there is no constitutional value in false statements of fact"]; see also *Larson v.*

10

*City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1284 ["Like ordinary speech, commercial speech that is misleading, fraudulent, or concerns unlawful activity is not protected at all by the First Amendment"]; *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 48 ["The First Amendment does not sanction the infliction of physical injury merely because achieved by word, rather than act"].) Courts have therefore held such tortious conduct is not immune from civil liability (*Gertz*, at p. 340), and government has a legitimate interest to protect citizens from being victimized by it (*Larson*, at pp. 1284-1289).

Consequently, anti-SLAPP protection does not apply to commercial speech containing misrepresentations in public advertizing (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 43, 46-49), or to transactions where the landlord's challenged act was allegedly taken to mislead tenants and violate their vested rights (*Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1284, 1288).

Moreover, appellate courts have repeatedly rejected the claim that charging an allegedly excessive or improper rent is a constitutionally protected activity. (See *Ovideo v. Windsor Twelve Properties, LLC*, *supra*, 212 Cal.App.4th at pp. 110-111; *Santa Monica Rent Control Bd. v. Pearl Street, LLC*, *supra*, 109 Cal.App.4th at p. 1318 ["defendants have not presented any authority for the proposition that *their conduct in charging illegal rent is an act in furtherance of their rights* of petition or free speech" (italics added)]; see also *Marlin v. Aimco Venezia*, *LLC*, *supra*, 154 Cal.App.4th at pp.160-161.)

AVMGH does not focus on the gravamen of Residents' action. The allegation here is that AVMGH deliberately misled Residents and raised their rents in breach of an agreement. AVMGH has not shown how such alleged conduct is protected. (*Oviedo v. Windsor Twelve Properties, LLC*, *supra*, 212 Cal.App.4th at pp. 110-111; *City of Alhambra v. D'Ausilio*, *supra*, 193 Cal.App.4th at p. 1308; *Gallimore v. State Farm Fire & Casualty Ins. Co.*, *supra*, 102 Cal.App.4th at p. 1399; see also *Gertz v. Robert Welch, Inc.*, *supra*, 418 U.S. at p. 340.)

11

We have reviewed AVMGH's remaining contentions and we conclude it has not shown error.

The order is affirmed.  Costs on appeal are awarded in favor of the respondents.

<u>NOT TO BE PUBLISHED.</u>



GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

12

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Hart/King, A Professional Corporation, C. William Dahlin, Boyd L. Hill for Defendant and Appellant.

Horvitz & Levy LLP, John A. Taylor, Jr., Eric S. Boorstin; Perkins Coie LLP, Lester O. Brown, James G. Bernald, Amir Gamliel; Bet Tzedek Legal Services, Michelle Marie Kezirian, Patricia A. Van Dyke for Plaintiffs and Respondents.