Filed 2/21/20  Certified for Publication 3/16/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS OF HUMANITY, LLC, | D074790 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2018-00006337-CU-NP-CTL) |
| CONI HASS et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

The Spangler Firm and Arie L. Spangler for Defendant and Appellant Coni Hass.

Pettit Kohn Ingrassia Lutz & Dolin, Douglas A. Pettit, and Jocelyn D. Hannah for Defendants and Appellants John H. Donboli, JL Sean Slattery, and Del Mar Law Group LLP.

Browne George Ross, Peter W. Ross, and Charles Avrith for Plaintiff and Respondent.

1

John H. Donboli, JL Sean Slattery, and Del Mar Law Group LLP (collectively the Del Mar Attorneys) filed a mislabeling lawsuit on behalf of a putative class of consumers who claimed they were misled by "Made in the U.S.A." labels on designer jeans manufactured by Citizens of Humanity (Citizens). Citizens's jeans were allegedly made with imported fabrics and other components. The linchpin of the purported class action was that the "Made in the U.S.A." labels violated former Business and Professions Code section 17533.7.[1] However, a new law was passed after the complaint was filed that relaxed the previous restrictions and, ultimately, the lawsuit was dismissed with prejudice. (Stats. 2015, ch. 238, § 1.)

Citizens then filed this malicious prosecution action against the named plaintiff in the prior case (Coni Hass), a predecessor plaintiff (Louise Clark), and the Del Mar Attorneys. Each defendant filed a motion to strike the complaint under the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, Code of Civil Procedure section 425.16. Finding that Citizens met its burden to establish a probability of prevailing on the merits, the trial court denied defendants' motions.

Hass and the Del Mar Attorneys (together Appellants) appeal contending Citizens failed to make a prima facie showing that it would prevail on its claims. We disagree. As we shall explain, (1) there are no undisputed fact on which we can determine, as a matter of law, whether the Del Mar Attorneys and Clark had probable cause to pursue the

---

[1] Statutory references are to the Business and Professions Code unless otherwise specified.

2

underlying actions; (2) there is evidence which would support a reasonable inference the Appellants were pursuing the litigation against Citizens with an improper purpose; and (3) the district court's dismissal of the underlying action, with prejudice, constituted a favorable termination in the context of a malicious prosecution suit. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Litigation*

In June 2014, the Del Mar Attorneys initiated a putative class action lawsuit against Citizens in the U.S. District Court for the Southern District of California, alleging the company misleadingly labeled that its jeans were "Made in the U.S.A." when they used imported components (fabric, thread, buttons, zipper assembly). The putative class consisted of "all persons in the United States" who bought apparel from Citizens that was labeled "Made in the U.S.A." within the four-year limitations period. Louise Clark, the named plaintiff, allegedly bought a pair of "Boyfriend"-style Citizens jeans for $218 at a Macy's store in San Diego shortly before the lawsuit was filed.

An amended complaint followed, and the district court thereafter denied Citizens's motion to dismiss the action on federal preemption grounds. In May 2015, Citizens filed an answer to the First Amended Complaint, admitting that it placed the label "Made in the U.S.A." on the outer label of some "Boyfriend" jeans and that "some component parts" of those jeans were from outside the United States.

The case proceeded to discovery. At her deposition in November 2015, Clark admitted she was related to Slattery, one of the attorneys handling her case. Citizens

3

promptly moved to disqualify the Del Mar Attorneys.  Clark filed a declaration stating she felt the attention would distract from the merits of the case and indicating she no longer felt comfortable "being 'in the spotlight' in this manner."  The district court denied the disqualification motion and in early May 2016 permitted the Del Mar Attorneys to substitute Coni Hass for Clark as the named plaintiff.  Clark withdrew her claims, and the district court found no bad faith in the firm's decision to bring in a new class plaintiff.

Now proceeding on behalf of Hass and the putative class, the Del Mar Attorneys filed a second amended complaint on May 5, 2016.  That complaint alleged that Hass bought a pair of Citizens "Ingrid"-style jeans from Nordstrom around November 2013, relying on the "Made in the U.S.A." label.  It asserted three interrelated causes of action: false labeling under Business and Professions Code section 17533.7, a derivative violation under the Unfair Competition Law (UCL, Bus. & Prof. Code, § 17200 et seq.), and a violation of the Consumers Legal Remedies Act (CLRA, Civ. Code, § 1750 et seq.).

Meanwhile, the Legislature amended section 17533.7.  (Stats. 2015, ch. 238, § 1, effective Jan. 1, 2016.)  Like its predecessor, the amended statute prohibits selling products in California labeled with "Made in U.S.A." or the like where the item "has been entirely or substantially made, manufactured, or produced outside the United States."  (Compare former § 17533.7 with current § 17533.7, subd. (a).)  But unlike the original statute, the amended version includes two safe harbors.  Merchandise could now be labeled "Made in U.S.A." if foreign parts comprise no more than 5 percent of the product's final wholesale value (§ 17533.7, subd. (b)), or if foreign-sourced materials

4

could not be domestically sourced and comprise no more than 10 percent of the product's final wholesale value (§ 17533.7, subd. (c)).[2]

Citizens filed a motion to dismiss Hass's second amended complaint for failure to state a claim under the amended statute. (Fed. Rules Civ.Proc., rule 12(b)(6).) The district court granted the motion. Although statutes generally apply only prospectively, the court applied an exception under California law that wholly statutory claims abate with repeal or amendment of the remedial statute. Based on California's safe harbor doctrine, the court also dismissed Hass's related claims under the CLRA and UCL. The dismissals as to all three causes of action were without prejudice to amending the complaint to show the safe harbors in amended section 17533.7 did not apply.

Citizens also argued in its motion to dismiss that Hass lacked standing as to products she did not purchase. The court accepted this as an alternative basis to dismiss a substantial portion of the class claims. Hass alleged she bought Ingrid-style jeans but did not allege that Citizens's other products were substantially similar, as required for standing over those putative class claims. As with its ruling on the merits, the dismissal

---

[2]     Under the old law, enacted in 1961, courts interpreted the "entirely or substantially made" language in section 17533.7 strictly. (See *Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 690-692 (*Colgan*) [although tools were designed, assembled, and finished in the United States, manufacturer's use of foreign-made component parts precluded a "Made in U.S.A." label]; see generally, *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 329 ["to some consumers, the 'Made in U.S.A.' label matters"].) By amending the statute in 2015, the Legislature sought to update labeling standards to reflect the realities of a complex global economy, which limit a manufacturer's ability to make products exclusively with domestic components. (Assem. Com. on Privacy & Consumer Protection, Rep. on Sen. Bill No. 633 (2015−2016 Reg. Sess.) Jul. 7, 2015, p. 4.)

was without prejudice to adding additional standing allegations in an amended pleading. However, Hass decided not to amend and instead requested voluntary dismissal. In December 2016, based on that request, the court dismissed the federal case with prejudice.

*The Malicious Prosecution Action and Anti-SLAPP Motion*

In February 2018, Citizens filed the instant malicious prosecution action against Clark, Hass, and the Del Mar Attorneys. The defendants moved to strike the complaint under the anti-SLAPP statute (Code Civ. Proc., § 425.16). Included with their motions was a declaration by Donboli describing the underlying litigation, his firm's reasons for substituting Hass for Clark, and admitting Hass filed a notice of intent not to amend the complaint. In the notice of intent not to amend the complaint, Hass explained:

> "The Court's December 6, 2016 order found, in part, that Coni Hass lacked subject matter jurisdiction to bring claims on additional products. In light of this ruling, Plaintiff Coni Hass requests the Court to dismiss the entire case for lack of subject matter jurisdiction."

In support of the anti-SLAPP motion, Hass filed a declaration indicating she relied on the "Made in the USA" label in buying her jeans and though she lacked documentation, believed in good faith that she bought those jeans at a Nordstrom store in San Diego in 2013. Each of the defendants also submitted pleadings, discovery responses, motions, and rulings by the federal court.

Citizens opposed the anti-SLAPP motions with evidence it maintained showed the Del Mar Attorneys selected Clark and Hass to represent the class, knowing neither had relied on the labels in the jeans they purchased and thus were illegitimate, "shill"

6

plaintiffs. A declaration by Gary Freedman, Citizens's manager and general counsel, indicated the company had "made a deliberate choice to manufacture its denim jeans products in [the U.S.], despite the extra cost" and employed nearly 500 workers in the Los Angeles area. Excerpts of depositions taken of Clark, Hass, and the Del Mar Attorneys in the underlying case were offered to question their motivations for prosecuting that action. The Clark and Hass excerpts explored whether either named plaintiff actually relied on the "Made in the U.S.A." label in purchasing their jeans. These excerpts were also offered to question how the two women became involved in the case—in Clark's case, based on her relationship to Slattery and past participation in the firm's mislabeling lawsuits, and in Hass's case, being contacted out-of-the-blue by an attorney at the Del Mar Law Group after she made an unrelated complaint on a class action website about the mislabeling of essential oils. Excerpts from the depositions of Slattery and Donboli were offered to question their firm's investigation of Clark's and Hass's claims.

Citizens also submitted prior putative class action complaints filed by the Del Mar Attorneys with Clark as the named plaintiff. These complaints and Clark's January 2016 declaration requesting to withdraw because of the " 'spotlight' " were offered to support its argument that Clark was a "shill." Finally, Citizens submitted a copy of the second amended complaint in the prior case and the court's dismissal orders.

The trial court denied all three anti-SLAPP motions, finding Citizens had established a probability of prevailing on the merits as to each essential element of its malicious prosecution action. As to favorable termination, the court relied on Hass's

7

decision not to amend and Clark's decision to step down as putative class representative.

Crediting Citizens's deposition excerpts, it further found a sufficient showing that the

underlying case was prosecuted without probable cause:

> "Plaintiff Citizens has shown a prima facie case to defeat the Anti-SLAPP motion on this element.  As for the original plaintiff, Clark, her deposition testimony has been provided which provides evidence to support lack of probable cause to assert 'Made in the USA' claims, particularly with respect to reliance.  With respect to Hass, plaintiff has provided evidence related to how Hass came into the litigation and her apparent lack of knowledge of Citizens jeans.
>
> "With respect to attorneys Slattery and Donboli, plaintiff has provided evidence regarding their handling of the litigation that supports inferences of lack of probable cause if not at the inception of the litigation, at least after the deposition of Ms. Clark."

Finally, the court found that Citizens had made a prima facie case that the prior case was

brought for an improper purpose, such as extracting a settlement having no relation to the

merits of the claim.

## DISCUSSION

Appellants appeal the order denying their anti-SLAPP motions.[3]  They argue that

Citizens did not produce sufficient evidence to support the superior court's conclusion

that Citizens established a probability of prevailing on the merits as to each element of its

malicious prosecution action.  We disagree.

---

[3]    Although Clark filed a notice of appeal, her appeal was dismissed when she failed to file an opening brief.  Thus, we discuss Clark in the context of Hass's and the Del Mar Attorneys' arguments, but we eschew any analysis of the anti-SLAPP motion or the malicious prosecution action as it relates solely to Clark.

8

# I

## THE ANTI-SLAPP MOTIONS

### A. *Anti-SLAPP Overview*

A SLAPP suit, or a strategic lawsuit against public participation, is one that seeks to chill a party's valid exercise of constitutional rights to free speech and to petition for redress. (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1520.) The goal of the anti-SLAPP procedure is to eliminate meritless or retaliatory litigation at an early stage of proceedings. (*Ibid.*) Code of Civil Procedure, section 425.16 provides in pertinent part:

> "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc. § 425.16, subd. (b)(1).)

We use a two-step process to resolve an anti-SLAPP motion. In the first step, the defendant must establish that the challenged claim arises from protected activities. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).) The parties agree that Citizens's malicious prosecution action meets that standard. "The plain language of the anti-SLAPP statute dictates that every claim of malicious prosecution is a cause of action arising from protected activity because every such claim necessarily depends upon written and oral statements in a prior judicial proceeding." (*Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 215 (*Daniels*); see generally, *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733-741.)

9

This case therefore turns on the second inquiry—whether Citizens has met its burden of establishing a probability it would prevail on the merits. (*Baral*, *supra*, 1 Cal.5th at p. 384; Code Civ. Proc., § 425.16, subd. (b)(1).)[4] "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.)

This second step is a summary-judgment-like procedure. (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940 (*Sweetwater*).) We first determine whether Citizens's prima facie showing is enough to win a favorable judgment. (*Ibid.*) This threshold is "not high." (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 458.) Claims with minimal merit proceed. (*Sweetwater*, at p. 940.) We accept Citizens's evidence as true and do not weigh evidence or resolve conflicting factual claims. (*Ibid.*) We may consider affidavits, declarations, and their equivalents if it is reasonably possible these statements will be admissible at trial. (*Id.* at p. 949.)

After examining Citizens's evidence, we evaluate Appellants' showings only to determine if they defeat Citizens's claim as a matter of law. (*Sweetwater*, *supra*, 6 Cal.5th at p. 940.) Appellants can prevail either by establishing a defense or the absence of a necessary element. (*1-800 Contacts, Inc. v. Steinberg* (2003) 107 Cal.App.4th 568, 585.) If there is a conflict in the evidence (the existence of a disputed material fact), the

---

4     Citizens contends Hass and the Del Mar Attorneys waived their right to challenge the sufficiency of the evidence by failing to fairly summarize evidence in its favor. We disagree that Appellants' summary of the evidence was deficient.

10

anti-SLAPP motion should be denied.  (See *Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 112 (*Oviedo*).)

An action for malicious prosecution has three required elements:  "(1) the defendant brought (or continued to pursue) a claim in the underlying action without objective probable cause, (2) the claim was pursued by the defendant with subjective malice, and (3) the underlying action was ultimately resolved in the plaintiff's favor."  (*Lane v. Bell* (2018) 20 Cal.App.5th 61, 67.)  The trial court determined that Citizens established a probability of success as to each of these three elements and denied the anti-SLAPP motions.

"We review de novo the grant or denial of an anti-SLAPP motion."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)

B.  *The Likelihood of Success on the Merits*

1.  Probable Cause

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted."  (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1402 (*Sycamore*).)  The test is whether, on the basis of facts then known, any reasonable attorney would have believed that instituting or maintaining the prior action was tenable.  (*Ibid*.; see *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [continuing to pursue an action discovered to lack probable cause meets the standard].)  " 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory

11

which is untenable under the facts known to him.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292 (*Soukup*).)

If there is " 'no dispute as to the facts upon which an attorney acted in filing the prior action, the question of whether there was probable cause to institute that action is purely legal.' [Citation.] 'The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted.' [Citation.]" (*Daniels*, *supra*, 182 Cal.App.4th at p. 222.) So, it is often said that "the existence or absence of probable cause has traditionally been viewed as a question of law to be determined by the court, rather than a question of fact for the jury. . . . [¶] . . . [It] requires a sensitive evaluation of legal principles and precedents, a task generally beyond the ken of lay jurors . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 875 (*Sheldon*).)

On the other hand, when there is a dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolution of that dispute, there becomes a fact question that must be resolved before the court can determine the legal question of probable cause. (See *Sheldon*, *supra*, 47 Cal.3d at p. 881 ["[T]he jury must determine what facts the defendant knew . . . ."].) "[C]ases have also made clear that if the facts upon which the defendant acted in bringing the prior action 'are controverted, they must be passed upon by the jury before the court can determine the issue of probable cause . . . . "What facts and circumstances amount to probable cause is a pure question of law. Whether they exist or not in any particular case is a pure question of fact. The

12

former is exclusively for the court, the latter for the jury." ' " (*Id.* at p. 877, citing *Ball v. Rawles* (1892) 93 Cal. 222, 227.)

Although probable cause must exist as to each cause of action (*see Soukup*, *supra*, 39 Cal.4th at p. 292), all three causes of action in the underlying case turned on Citizens's alleged violation of section 17533.7 in labeling its jeans as being "Made in the U.S.A."

a. *Representation of Clark*

Citizens argues no reasonable attorney would have sued on Clark's behalf, or continued litigating on her behalf when her deposition testimony revealed she was not misled. Its theme, echoed throughout the briefs, is that Clark is a "shill" who, with her brother-in-law, Slattery, participates in a cottage-industry of contrived "Made in the U.S.A" labeling lawsuits. Citizens asserts that the Del Mar Attorneys years ago "developed a scheme to misuse the court system for their own financial gain."

In response, the Del Mar Attorneys argue that Citizens has not shown that no reasonable attorney would have filed suit on Clark's behalf, and they emphasize the following facts. Clark bought a pair of Citizens Boyfriend-style jeans from a Macy's store in San Diego in 2014. The jeans were labeled, "Made in the U.S.A." At the time, courts construed the "entirely or substantially made" language in section 17533.7 strictly, such that merchandise containing even one foreign-made component could not be labeled as "Made in the U.S.A." (See *Colgan*, *supra*, 135 Cal.App.4th at pp. 690-692.) Donboli saw the labels on the jeans Clark bought and confirmed on retailers' websites that Citizens included "Made in the U.S.A." labels on other apparel. Although Clark's jeans had an outer label stating "Made in the U.S.A.," an inner label clarified in small print that

13

they were "Made in the USA with imported fabrics."  This inner label did not change Donboli's view that the outer label violated the statute.  Based on these facts, the Del Mar Attorneys contend probable cause existed.

We would agree with the Del Mar Attorneys that Citizens failed to carry its burden if these were the only facts in the record.  Similarly, if Citizens merely called Clark a liar or asserted she was a shill, without evidence, we would find probable cause existed.  However, that is not the record before us.

Instead, Citizens proffered significant evidence to support the reasonable inference that Clark was a shill plaintiff, and the Del Mar Attorneys were aware of this fact.  It is undisputed that Slattery is Clark's brother-in-law, and that Clark was a named plaintiff in Slattery's firm's prior Made-in-USA labeling lawsuits involving air freshener and nasal spray products.  Clark also was the named plaintiff in an ingredient mislabeling lawsuit filed by the Del Mar Attorneys against a dog food company.  Although these facts alone would not support a reasonable inference that Clark was a shill, when combined with other facts that became apparent at Clark's deposition, we determine that a reasonable inference could be drawn that Clark was a shill plaintiff.

For example, Clark testified at her deposition that she purchased the Citizens jeans from Macy's, brought them home, took them out of the bag, placed them on the floor, left the tags on the jeans, and then went to wash them.  However, when she went to wash the jeans, she first noticed that the care label on the inside of the jeans stated that the jeans were made with imported fabric.  It is not clear why Clark would leave the tags on the jeans when she testified that she was going to wash them and was apparently preparing to

14

do so.  Such a detail supports the inference that Clark purchased the jeans to serve as the lead plaintiff in the mislabeling case, not because she wanted to purchase and own jeans that were made in the United States.

Also, Clark admitted that she had purchased a lot of jeans and did not regularly look to see where the jeans were made before she purchased them.  She brought 32 pairs of jeans to her deposition and, apparently, all but three of them had labels indicating they were made outside the United States.  Clark testified that she owned "a lot" of shoes but could only think of one pair that was made in the United States.  Indeed, beyond just in buying jeans, Clark acknowledged that for the products she buys, she does not look at the labels before she makes purchases.  This deposition testimony further supports Citizens's claim that Clark did not care where her jeans were made and would not have purchased the Citizens jeans simply to wear.  Rather, she purchased them to serve as a plaintiff in a mislabeling case for the Del Mar Attorneys, like she had several times previously.

After she was deposed, Clark filed a declaration in support of a motion for leave to amend complaint to name a new class plaintiff.  In the declaration, Clark stated that she did not wish to serve as a named plaintiff any longer because she was "no longer comfortable with being 'in the spotlight' in this manner."  Citizens had filed a motion to disqualify the Del Mar Attorneys as counsel of record based on what Citizens had learned during Clark's deposition, and Clark declared that she believed "that focusing attention on me in this manner would be a distraction from the merits of this case."  A reasonable inference to be drawn from Clark's withdrawal, coupled with the foundation of her

15

deposition testimony, is that she did not want to serve as the named plaintiff to avoid further scrutiny as to why she purchased the Citizens jeans.

Considering Clark's familial relationship with Slattery, her history of serving as a plaintiff on mislabeling cases for the Del Mar Attorneys, her willingness to buy foreign made products (including jeans and shoes), her admission that she did not look at the labels before buying products, the fact she left the tags on her jeans, and her withdrawal as the named plaintiff, a reasonable inference could be drawn that she was a shill plaintiff. In other words, she purchased the subject jeans not because she was duped by the "Made in the U.S.A." label, but because she wanted to again assume the role as a named plaintiff in another mislabeling case for the Del Mar Attorneys. And a reasonable attorney would not represent a shill plaintiff.

Thus, we are faced with two conflicting narratives, both supported by evidence, regarding the origin of the federal mislabeling case. According to the Del Mar Attorneys, Clark was a consumer who would purchase products that were made in the U.S.A. when it was within her budget. She purchased the Boyfriend-style jeans with a "Made in the U.S.A. label" believing they were made in the United States. When she discovered they were actually made with imported fabric, she decided to sue and engaged the Del Mar Attorneys. In contrast, Citizens argues that Clark has a history of serving as a lead plaintiff in mislabeling claims filed by the Del Mar Attorneys, and she purchased the subject jeans not because she was fooled by the label, but because she wanted to again serve as a plaintiff. Further, based on Clark's relationship with Slattery and her experience serving as a named plaintiff in previous mislabeling cases, the Del Mar

16

Attorneys were aware that Clark was a shill. There are no undisputed facts on which we can determine, as a matter of law, whether probable cause existed. Instead, there are disputed material facts that present factual questions that must be resolved before a legal determination of probable cause can be made. As a result, Citizens has met its burden for purposes of opposing an anti-SLAPP motion on this issue as to the Del Mar Attorneys involving their representation of Clark. (See *Oviedo*, *supra*, 212 Cal.App.4th at p. 115; *Sheldon*, *supra*, 47 Cal.3d at pp. 877, 881.)

b. *Representation of Hass*

Having found that Citizens satisfied its burden of showing a prima facia case that the Del Mar Attorneys lacked probable cause to file the underlying mislabeling complaint with Clark as the named plaintiff, we next consider whether Hass had probable cause to bring suit. Hass was added as the lead plaintiff in the underlying suit after Clark withdrew. Hass alleged that she purchased a pair of Ingrid-style jeans from a San Diego Nordstrom store in or around November 2013 and, that those jeans were "marked with a 'Made in the U.S.A.' country of origin designation when the product actually contains component parts made outside of the United States."

Apparently, Hass entered her contact information on a website called Top Class Actions to complain about the mislabeling of cypress essential oil as "cedarwood essential oil." Hass did not recall providing any additional information on the website.

17

Sometime later, Hass was contacted by Camille DeCamp from the Del Mar Law Group. DeCamp and Hass spoke by phone for "a few minutes."[5]

During her deposition, Hass testified that she thought the fabric of her jeans "wore thin faster than [she] would have thought," but she wore the jeans on multiple occasions, and, in fact, subsequently purchased a second pair of Citizens jeans from May Company because "they were having a really good clearance sale."[6] Regarding the purchase of Hass's first pair of Citizens jeans, Hass stated that a "sales gal" at Nordstrom brought her "lots" of brands of jeans, and she chose to purchase the Ingrid-style Citizens jeans. She paid in cash and no longer possessed a receipt evidencing her purchase. She testified that she looked at the label on the jeans before she purchased them but did not recall if the label stated, "Made in the U.S.A." or "Made in the U.S.A. with imported fabrics." However, Hass did not investigate what materials Citizens used to manufacture the Ingrid-style of jeans, and she did not know where the materials Citizens used to manufacture the jeans came from or even where Citizens manufactured the Ingrid-style

_____

[5] At his deposition, Donboli recalled that DeCamp might have contacted Hass through a fee-based website, "Classaction.com." But he explained that the site generally included prompts, such as, "did you buy Hebrew National kosher hotdogs during this time period? If you did, there's X, Y, Z person that's conducting an investigation. Please contact them." There is no evidence in the record that Donboli and Hass talked before Hass was added as a named plaintiff in the second amended complaint.

[6] During her deposition, Hass was asked if she looked at the label before purchasing the second pair of jeans. She replied, "I always look at the labels." She then clarified that she looks at the labels of all products: "Yeah. I often will read the label on a can of beans." There is no indication in the record regarding the style of these second pair of Citizens' jeans or what the label on them said. Further, there do not appear to be any allegations in the second amended complaint specifically addressing Hass's second pair of Citizens jeans. Appellants do not argue that the second pair of jeans plays any role in the instant probable cause analysis.

18

jeans. When asked later if she still owned the Ingrid-style jeans, she answered, "They're not jeans anymore. They're cutoffs."

Hass acknowledged that before talking to DeCamp, she was not contemplating suing Citizens. Yet, after she learned Citizens was "labeling [its] products in a way that was not true because it wasn't all made in America," she apparently agreed to be a named plaintiff in the second amended complaint.

There is other evidence in the record bearing on what Hass and the Del Mar Attorneys knew when the second amended complaint was filed. In opposition to the anti-SLAPP motions, Gary Freedman, Citizens's general counsel, submitted a declaration. Among other things, Freedman declared that Ingrid-style jeans were not sold at Nordstrom in San Diego in or around November 2013. He also stated, "At no time has Citizens labeled its Ingrid-style jeans with labels that solely read 'Made in the U.S.A.' At all times, the labels on Citizens'[s] Ingrid-style jeans have expressly stated the jeans were made with imported fabrics."

With this foundation in mind, we try to ascertain Hass's and the Del Mar Attorneys' knowledge at the time of filing the second amended complaint. To do so, we begin with the specific allegations in the second amended complaint regarding the Ingrid-style jeans purchased by Hass.

The second amended complaint states in part: "In or around November 2013, Plaintiff Hass purchased the Ingrid brand jeans at a Nordstrom store in San Diego. At the time of the purchase, the product itself was marked with a 'Made in the U.S.A.' country of

19

origin designation when the product actually contains component parts made outside of the United States."

Hass also alleged that she "relied upon" the " 'Made in the U.S.A.' representation" in deciding to purchase the Ingrid-style jeans. She alleged that at the time she made the subject purchase, "she was supporting U.S. jobs and the U.S. economy."

In the second amended complaint, Hass emphasized the importance of a label explicitly stating "Made in the U.S.A.": "The 'Made in the U.S.A.' claim is prominently printed on the apparel products themselves." Indeed, as Hass brought the complaint as a named plaintiff in a purported class action, the allegations in the complaint underscored the significance of the "Made in the U.S.A." label: "Plaintiffs intend to seek class wide relief on behalf of all California purchasers of any [Citizens] apparel product labeled as 'Made in the U.S.A.' that incorporated foreign-made component parts (in violation of California and/or federal law) and not just the specific brand of jeans purchased by Plaintiff." Therefore, the second amended complaint hinged on two essential alleged facts: the subject apparel (in Hass's case, Ingrid-style jeans) contained: (1) a label stating "Made in the U.S.A." and (2) foreign made component parts in violation of California and/or federal law. Based on these two primary allegations, the Del Mar Attorneys, with Hass as the lead plaintiff, aimed to certify a class action, obtain restitution and injunctive relief, and be awarded attorney fees and costs. Consequently, at the time the second amended complaint was filed, in order to have probable cause, we would expect Appellants to know that Hass purchased Ingrid-style jeans with a label that said "Made in the U.S.A." and components of those jeans came from a foreign country in violation of

20

California and/or federal law. On the record before us, it is unclear whether Appellants had the requisite knowledge.

DeCamp contacted Hass after Hass provided her contact information on the Top Class Actions website. They talked for a "few minutes." We do not know the substance of that conversation as it is covered by the attorney-client privilege. However, it is clear that Hass told DeCamp that she had purchased Ingrid-style jeans from Nordstrom around November 2013. We are aware that there is evidence in the record that Nordstrom was not selling those style of jeans in November 2013. Yet, that evidence does not cause us concern. In general, a lawyer may rely on information provided by his or her client in prosecuting an action unless the lawyer discovers that information is false. (*Daniels*, *supra*, 182 Cal.App.4th at p. 223.) Moreover, the evidence that Nordstrom did not sell the subject jeans during November 2013 does not necessarily call into question whether Hass actually purchased the jeans. Rather, it could simply indicate that Hass was mistaken about where she purchased the jeans some two years earlier.[7] If this was the only evidence calling into question the existence of probable cause in filing the second amended complaint, we would find Citizens did not satisfy its burden. However, there is other evidence, which raises serious concerns.

Hass admits that she did not do any investigation regarding the origin of the components of the Ingrid-style jeans. She was not aware of where Citizens manufactured

---

[7]     Nonetheless, Citizens could still argue at trial that the fact Nordstrom did not sell Ingrid-style jeans in November 2013 shows that Hass is lying about ever purchasing these jeans. We do not consider this argument in our analysis.

those jeans. Nevertheless, it is apparent that DeCamp told her that "not all the jeans [made by Citizens] were from the United States" and that Citizens was "labeling [its] products in a way that was not true because [they weren't] all made in America." But, we do not know if DeCamp told Hass that the Ingrid-style jeans were not made in the United States or contained foreign components. Indeed, there is no indication in the record that DeCamp or anyone else at the Del Mar Law Group knew if the Ingrid-style jeans were made with foreign components. At this time, Citizens had answered the first amended complaint. In its answer, it admitted "that the phrase 'Made in the U.S.A.' appears on the outer label of some Citizens of Humanity brand, Boyfriend style jeans." Citizens also admitted "that some component parts of Citizens of Humanity brand, Boyfriend style jeans were made outside the United States." Thus, it appears the Del Mar Attorneys knew that some components of Citizens's Boyfriend-style jeans were made from foreign components. However, there is no indication in the record that the Del Mar Attorneys had the same knowledge as to Ingrid-style jeans.

Further, it is unclear whether Hass or the Del Mar Attorneys knew the Ingrid-style jeans Hass purchased contained a "Made in the U.S.A." label. At her deposition, Hass did not recall whether the label on her jeans said "Made in the U.S.A." or "Made in the U.S.A. with imported fabrics." There is no indication in the record that the Ingrid-style

jeans purchased by Hass were an exhibit at her deposition.[8]  There is no indication in the record that the Del Mar Attorneys ever saw the label on Hass's jeans.  And Freedman's declaration indicates that Citizens did not label its Ingrid-style jeans with labels that solely read "Made in the U.S.A." but, instead, carried labels that indicated the jeans were made with imported fabrics.

We are aware that Hass submitted a declaration in support of her anti-SLAPP motion that stated she purchased the Ingrid-style jeans, "which were marked with a 'Made in the USA' tag."  Hass's declaration is not consistent with her deposition testimony and contradicts Freedman's declaration.  At most, Hass's declaration does not establish what she and/or the Del Mar Attorneys knew when the second amended complaint was filed.  Instead, it indicates a disputed issue of material fact, the existence of which, requires us to conclude Citizens met its burden with respect to the probable cause element.  (See *Oviedo*, *supra*, 212 Cal.App.4th at pp. 114-115; *Sheldon*, *supra*, 47 Cal.3d at pp. 877, 881.)  This conflict as to the contents of the label on Hass's jeans is especially disquieting under the unique facts of this case.  The Del Mar Attorneys filed a purported class action based on a pair of jeans alleged to have a "Made in the U.S.A." label.  It is unclear that Hass or the Del Mar Attorneys knew the subject jeans had such a label at the time the second amended complaint was filed.  In fact, there is no indication in the record that the

---

8      In contrast, Clark brought the Boyfriend-style jeans she purchased to her deposition.  Also, there are pictures of the Clark's jeans in the record, including labels that say "Made in the U.S.A."  There are not any pictures of the Ingrid-style jeans purchased by Hass in the record.

23

Ingrid-style of jeans allegedly purchased by Hass had the "Made in the U.S.A." label in any event.[9]

## 2. Malice

" 'For purposes of a malicious prosecution claim, malice "is not limited to actual hostility or ill will toward [appellant]. Rather, malice is present when proceedings are instituted primarily for an improper purpose." [Citation.]' " (*Oviedo*, *supra*, 212 Cal.App.4th at p. 113.) For example, evidence suggesting that " ' " ' "the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim" ' " ' " (*ibid*.), and evidence that an attorney failed to conduct an adequate investigation before filing a lawsuit (*Sycamore*, *supra*, 157 Cal.App.4th at p. 1407) supports a finding of malice.

"[T]he defendant's motivation is a question of fact to be determined by the jury." (*Sheldon*, *supra*, 47 Cal.3d at p. 874.) "Because direct evidence of malice is rarely available, 'malice is usually proven by circumstantial evidence and inferences drawn from the evidence.' [Citation.]" (*Jay v. Mahaffey* (2013) 218 Cal.App.4th 1522, 1543.)

The record contains some evidence that would support a reasonable inference by a trier of fact that Appellants were pursuing the litigation against Citizens with an improper purpose. As to Hass, she testified that she believed she purchased the Ingrid-style jeans from Nordstrom in 2013, but she has no receipt evidencing the purchase. She did not

---

[9]    Because we conclude Citizens carried its burden of establishing a prima facia showing of a lack of probable cause under former section 17533.7, we do not reach Citizens's argument that Appellants lacked probable cause once section 17533.7 was amended.

recall if the label on the Ingrid-style jeans contained a label that said "Made in the U.S.A." or "Made in the U.S.A. with imported fabric." She did not investigate where Citizens made its jeans. She purchased a second pair of Citizens jeans, but there is no information in the record recording the style of those jeans or what the subject label said. There is no evidence that she purchased this second pair of jeans based on a "Made in the U.S.A." label. Instead, she indicated she bought them at a clearance sale. Hass admitted that she had no plans to sue Citizens until she was contacted by the Del Mar Attorneys and informed that Citizens mislabels its jeans.

In addition, Citizens offered additional evidence that further calls into question Hass's motive for being a plaintiff in the underlying action. Citizens provided evidence that at the time Hass claimed she purchased the Ingrid-style jeans (November 2013), Nordstrom was not selling those jeans. Also, Citizens offered evidence that Ingrid-style jeans did not have labels that solely stated: "Made in the U.S.A." A reasonable inference can be drawn from this evidence that Hass did not subjectively believe that the action was tenable. (See *Sycamore*, *supra*, 157 Cal.App.4th at p. 1407.)

Likewise, we determine there is sufficient evidence of malice as to the Del Mar Attorneys. As we discuss above, a reasonable inference can be drawn that Clark was a shill plaintiff, that she purchased the Citizens jeans to serve as a plaintiff in a class action in order to be paid. Further, based on her role in previous suits filed by the Del Mar Attorneys, it was reasonable to infer that the Del Mar Attorneys were aware of Clark's motivations in serving as the lead plaintiff in a purported class action against Citizens (or at least should have been aware after her deposition).

25

The evidence also shows similar problems in the Del Mar Attorneys' representation of Hass. They never saw the Ingrid-style jeans that Hass allegedly purchased. They did not know what the label on those jeans actually said. In fact, based on the record, it appears the Del Mar Attorneys spent little more than a few minutes discussing Hass's potential claims against Citizens with Hass before they decided to represent her and add her as a class plaintiff. In short, the Del Mar Attorneys conducted little investigation into Hass's claims, even when significant questions were raised regarding the validity of her claims. Moreover, the attorneys for Citizens represented that the Del Mar Attorneys pressured them for a quick settlement before a class was certified or extensive discovery conducted.

Appellants deny all the allegations of malice and point to evidence they believe undercuts Citizens's claim of malice.[10] But none of the evidence put forward by Appellants defeats the evidence in Citizens's favor as a matter of law. (See *Oviedo*, *supra*, 212 Cal.App.4th at p. 114.) Simply put, there is enough evidence here that satisfies Citizens's burden with respect to this element. (See *Bergman v. Drum* (2005) 129 Cal.App.4th 11, 25 ["While these circumstances do not conclusively establish malice, they are sufficient to allow the issue to go to the trier of fact for resolution."].)

3. Favorable Termination

---

10    For example, Appellants emphasize they believed in their claims, the Del Mar Attorneys investigated Clark's claim before filing suit, the claims were based on Citizens's violations of the law as the law existed at that time, Clark and Hass testified they were involved in the suit to vindicate similarly situated consumers, and the Del Mar Attorneys never paid Hass to be a plaintiff.

After the change in the mislabeling statute, Citizens brought a motion to dismiss, contending Hass did not plead a violation of the new version of section 17533.7, and as such, her other claims fail because they are contingent on section 17533.7. Citizens also argued Hass lacked standing to sue for products that she did not purchase. The district court agreed with Citizens that Hass had not stated a valid claim under the new statute. Thus, it dismissed Hass's claim under section 17533.7 without prejudice. Additionally, the court determined that Hass's other claims under the UCL and CLRA failed under "California's safe harbor doctrine" and dismissed those causes of action without prejudice Finally, the court concluded that Hass lacked "standing to proceed either for herself or on behalf of others as to products she did not purchase." As such, the court dismissed without prejudice all of Hass's claims on this ground as well. Hass opted not to file an amended complaint, and the district court then dismissed the entire action with prejudice.

In ruling on the Appellants' anti-SLAPP motion, the superior court found that the district's court's dismissal with prejudice of the entire action was a favorable termination in the context of a malicious prosecution suit. Appellants claim this finding was erroneous. We disagree.

"A voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. [Citations.] This is because ' "[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant]. . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted." ' [Citation.]" (*Sycamore*, *supra*, 157 Cal.App.4th at p. 1400.)

27

Appellants acknowledge the existence of the presumption that a voluntary dismissal reflects a favorable termination on the merits; however, they insist the superior court had a duty to "evaluate the underlying reasons for terminating the action." To this end, they rely on *Sycamore*, *supra*, 157 Cal.App.4th 1385, and point out that the appellate court there noted that the trial court observed that the malicious prosecution plaintiff "offered evidence that reasonably suggested that the dismissal occurred because [the underlying suit plaintiff's] claims lacked merit." (*Id*. at p. 1400.) Appellants contend that Citizens offered no analogous evidence below, and the superior court did not properly consider why Hass did not amend her complaint. We find Appellants' reliance on *Sycamore* misplaced.

In *Sycamore*, after she failed to show up for her deposition, the plaintiff in the underlying suit instructed her attorneys to dismiss her complaint. Thus, the plaintiff voluntarily dismissed her claims. Subsequently, in exchange for a waiver of costs, the plaintiff agreed to have her claims dismissed with prejudice. (*Sycamore*, *supra*, 157 Cal.App.4th at p. 1394.) Before the dismissal of plaintiff's claims, the trial court did not evaluate the merit of those claims. Alternatively stated, the defendant did not bring a dispositive motion or demur to challenge the plaintiff's causes of action.

Here, contrary to *Sycamore*, Citizens brought a successful motion to dismiss all of Hass's claims. The district court ruled on the merits of Hass's three causes of action, explicitly finding that Hass "failed to adequately allege that [Citizens] violated the amended and controlling version of § 17533.7" and that her other two claims "fail to state a plausible claim of relief." The court also found that Hass lacked standing to sue on

28

behalf of a putative class of purchasers of products that she, herself, did not purchase. In other words, the district court determined it lacked subject matter jurisdiction to hear claims Hass was bringing based on products she did not purchase. Therefore, the court dismissed Hass's "claims on behalf of other purchasers for products she did not purchase" on jurisdictional grounds. However, the court granted Hass leave to amend to address these deficiencies.

Hass elected not to file an amended complaint and requested the court "dismiss the entire case for lack of subject matter jurisdiction." The court then dismissed Hass's "case **WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 41(a)(2)." Hass maintains her actions coupled with the district court's dismissal underscore that the court dismissed her actions on purely jurisdictional grounds, and as such, the dismissal did not address the merits of her claims against Citizens.[11] We are not persuaded.

Hass asked the district court to dismiss the entire case for lack of subject matter jurisdiction. Such a dismissal would be inconsistent with the court's order on Citizens's motion to dismiss. The court did not find Hass lacked standing to bring claims on her behalf against Citizens for alleged violations of section 17533.7, the UCL, and the CLRA based on the jeans she purchased. Rather, the court found, on the merits, that Hass had not stated valid claims under any of those statutes based on the allegations in the

---

[11]    A "lack of standing" is a jurisdictional defect. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 438; *McKinny v. Board of Trustees* (1982) 31 Cal.3d 79, 90.) "[A] dismissal for lack of jurisdiction does not involve the merits and cannot constitute a favorable termination." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 882; *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750.)

29

operative complaint, but gave her leave to amend. The district court concluded Hass did not have standing to bring claims on behalf of others who had purchased different types of apparel from Citizens, unless she could plead additional facts to show the same alleged violations that plagued the Ingrid-style jeans also infected the other apparel sold by Citizens. Accordingly, the court did not have any grounds to dismiss the entire case for lack of subject matter jurisdiction as requested by Hass.

Moreover, it is clear from the court's order dismissing the entire case with prejudice that it did not simply find the case wanting on jurisdictional grounds. Federal Rules of Civil Procedure, rule 41(a)(2) (Rule 41(a)(2)) provides the following:

> "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice."

Thus, Rule 41(a)(2) allows a district court to dismiss any action, upon a plaintiff's request, "on terms that the court considers proper." Additionally, the rule dictates that the dismissal will be without prejudice, unless the order specifically states otherwise. Here, the district court dismissed the entire action with prejudice. It was not required to do so. Obviously, it thought such a dismissal was proper on the record before it. This dismissal effectively prevents Hass from suing Citizens for any alleged violations of section 17533.7, the UCL, and the CLRA based on her purchase of the Ingrid-style jeans. We struggle to see how such a dismissal could not be considered on the merits. As such, we

30

agree with the superior court that Citizens made a prima facia showing of favorable termination of the underlying lawsuit.[12]

Based on the foregoing, we agree with the superior court that Citizens has satisfied its minimal burden in opposing the anti-SLAPP motions. Citizens "demonstrated that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.) That said, we offer no opinion regarding the eventual success of Citizens's malicious prosecution suit on the merits.

DISPOSITION

The order is affirmed. Citizens is entitled to its costs on appeal.

HUFFMAN, Acting P. J.

I CONCUR:

HALLER, J.

---

[12]    Because Clark is not a party to this appeal, we need not consider whether Citizens proved a prima facia case of favorable termination as to her.

31

DATO, J., dissenting.

After a statutory amendment led Coni Hass to drop her mislabeling lawsuit against Citizens of Humanity (Citizens), Citizens filed this malicious prosecution action against her, prior named plaintiff Louise Clark, and their counsel John H. Donboli and JL Sean Slattery at Del Mar Law Group LLP (the Del Mar Attorneys).  Defendants filed motions to strike the malicious prosecution complaint under the anti-SLAPP statute.  (See Code Civ. Proc., § 425.16.)  The trial court determined that Citizens established a probability of success as to each of the essential elements for malicious prosecution and denied the anti-SLAPP motions.  The majority agree.

"One of the elements of an action for malicious prosecution is the absence of probable cause for bringing the prior action."  (*Wilson v. Parker*, *Covert & Chidester* (2002) 28 Cal.4th 811, 814 (*Wilson*).)  "Only those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit."  (*Id.* at p. 817.)  In my view, Citizens failed to make a prima facie showing that the underlying mislabeling lawsuit was instituted or maintained without probable cause.  As such, the anti-SLAPP motions should have been granted. (See *JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1527 [reversing for failure of proof as to a single essential element].)

At its core, this case turns on the distinction between a reasonable inference and a speculative one.  My colleagues and I broadly agree on the facts and applicable law.  We part ways in how we view those facts in the context of this anti-SLAPP motion. Although the disagreement appears on some level mundane—what credence to afford a

1

given set of facts—the import of today's decision implicates the ability of lawyers to zealously advocate for their clients.

A

Clark bought a pair of "Boyfriend" jeans in 2014 that Citizens admits were labeled "Made in the U.S.A." Because the jeans were made in this country with *imported* components, the label violated former section 17533.7 of the Business and Professions Code, which was strictly construed.[1] (See *Colgan v. Leatherman Tool Group*, *Inc.* (2006) 135 Cal.App.4th 663, 691−692.) To challenge this practice, the Del Mar Attorneys filed a putative class action lawsuit against Citizens on behalf of Clark as the named plaintiff.

I agree with the majority that where there is a dispute about the facts on which an attorney acted in filing a prior action, it is the jury's role to resolve that dispute before a court may decide whether the prior action was, as an objective matter, legally tenable or not. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 877, 881 (*Sheldon*).) And as the majority opinion points out, the burden to establish a prima facie showing to overcome an anti-SLAPP motion is "not high"; claims with "minimal merit" proceed. (*Greene v. Bank of America* (2013) 216 Cal.App.4th 454, 458; *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.) Where I part ways with my colleagues is in their conclusion that we are faced with "two conflicting narratives,

---

[1] Further statutory references are to the Business and Professions Code unless otherwise specified.

both supported by evidence, regarding the origin of the federal mislabeling case" filed on Clark's behalf.  (Maj. opn., *ante*, at p. 16.)

*Sheldon* clarified the lack of probable cause element for malicious prosecution. Explaining that the standard is objective in nature, the court rejected a formulation that considered the attorney's subjective belief in the tenability of a client's claim.  "[B]ecause the issue of the attorney's subjective belief or nonbelief in legal tenability would rarely be susceptible of clear proof and, when controverted, would always pose a factual question," such a standard "would in many cases effectively leave the ultimate resolution of the probable cause element to the jury, rather than to the court."  (*Sheldon*, *supra*, 47 Cal.3d at p. 879.)

Instead, the Supreme Court adopted an objective standard.  When "the facts known by the attorney are not in dispute, the probable cause issue is properly determined by the trial court under an objective standard; it does not include a determination whether the attorney subjectively believed that the prior claim was legally tenable."  (*Sheldon*, *supra*, 47 Cal.3d at p. 881.)  By contrast, when there is a dispute as to the existence of certain facts relied upon to show probable cause, "the jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding."  (*Ibid.*)  Recognizing that a malicious prosecution action is designed to protect the fundamental interest in freedom from *unjustifiable* and *unreasonable* litigation, "it is not unfair to bar a plaintiff's suit for damages even if the plaintiff can show that its adversary's law firm did not realize how tenable the prior claim actually was, since the plaintiff could properly have been put

3

to the very same burden of defending an identical claim if its adversary had simply consulted a different, more legally astute, attorney. This is a classic case of 'no harm, no foul.' " (*Id.* at p. 882.)

I do not believe this is a situation where the predicate facts conflict. "Although it is sometimes necessary to submit preliminary factual questions to the jury when there is a dispute as to facts which the defendant knew when he instituted the prior action," here, as in *Sheldon*, "there was no dispute as to facts of which [the Del Mar Law Group] was aware when it brought the prior action on [Clark's] behalf." (*Sheldon*, *supra*, 47 Cal.3d at p. 884.) The facts credited by the majority—Clark's family ties, history of serving as a plaintiff, failure to cut the tags off her jeans, and willingness to buy foreign-made goods—are not in dispute, even if the inferences they allegedly support are. (Compare *Olivares v. Pineda* (2019) 40 Cal.App.5th 343, 355−356 [factual dispute remained as to what facts attorneys knew when they prosecuted underlying unlawful detainer suit]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 223−224 [factual dispute remained where counsel offered no documents, declarations, or other evidence to support their clients' allegations in the underlying complaint] (*Daniels*).) The question here remains an objective one for the court—whether any reasonable attorney knowing the undisputed facts would find Clark's lawsuit tenable.

I also part ways with the majority's assessment of Citizens's evidence. The anti-SLAPP statute creates a "summary-judgment-like procedure" at an early stage of the litigation to weed out meritless actions arising from protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) To overcome an anti-SLAPP motion, Citizens " 'must

demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts *to sustain a favorable judgment* if the evidence [it] submitted . . . is credited.' " (*Wilson*, *supra*, 28 Cal.4th at p. 821, italics added.) In other words, the motion should be denied only if Citizens can substantiate the elements of its malicious prosecution action with evidence that, if believed, *would justify a favorable verdict.* (*Id.* at pp. 821, 824; *Baral*, at pp. 384−385.)

" 'An assessment of the probability of prevailing on the claim looks to *trial*, and the evidence that will be presented at that time.' " (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236.) The question is "whether there is admissible evidence showing facts that would, if proved at trial, support a judgment in its favor on those claims." (*Id.* at p. 1239.) Conversely, an anti-SLAPP motion must be granted if " 'the court concludes that the allegations made or the evidence adduced in support of the claim, even if credited, are insufficient as a matter of law to support a judgment[.]' " (*Id.* at p. 1238.)

Crediting Citizens's proffer, the majority suggest there is "significant evidence to support the reasonable inference that Clark was a shill plaintiff, and the Del Mar Attorneys were aware of this fact." (Maj. opn., *ante*, at p. 14.) What evidence specifically? One of the Del Mar Attorneys (but not the one in charge of the case) is Clark's brother-in-law, and Clark has been a named plaintiff in several of the firm's prior mislabeling lawsuits. Clark testified at her deposition that she left the tags on the jeans after coming home, as she prepared to wash them. She also testified that she purchased a lot of jeans but, under normal circumstances, rarely looked to see where they were made.

5

And after Clark was deposed, she sought to withdraw because she was no longer comfortable being in the spotlight. We are told that in their totality, these facts support a *reasonable* inference that Clark was a "shill" plaintiff, whose lawsuit was entirely contrived.

But can such facts, even in their totality, truly suffice to support a judgment at trial? Although an inference can serve as substantial evidence for a factual finding on appeal, " ' "the inference must be a reasonable conclusion from the evidence and cannot be based upon suspicion, imagination, speculation, surmise, conjecture or guesswork." ' " (*Shandralina G. v. Homonchuk* (2007) 147 Cal.App.4th 395, 411; see Evid. Code, § 600, subd. (b).) In the SLAPP context specifically, courts have confirmed that although we do not "*weigh* the credibility or comparative probative strength of competing evidence," we disregard evidence that is "argumentative, speculative, impermissible opinion, hearsay, or conclusory." (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 26−27.)

Clark's participation in other mislabeling suits does not support a *nonspeculative* finding that she was a "shill," as opposed to someone who relied on the labels of the products she purchased. Many consumers leave tags on newly purchased clothing until they wash or wear them—the fact that the tags were still on the jeans as Clark prepared the wash does not support a nonspeculative finding that her purchase was a ruse. For budgetary reasons Clark bought many foreign-made goods; this hardly means she did not

place a premium on jeans specifically labeled "Made-in-the-USA."[2]  And Clark's decision to withdraw as named plaintiff after facing accusations about her family ties does not permit us to conclude *why* she withdrew, and it is certainly not enough to allow a jury to find she withdrew because her disingenuous motives were about to be exposed.[3]

These observations are not an impermissible weighing of the evidence.  Courts always perform an essential gatekeeping role in deciding how much is enough evidence to allow a jury to reach a reasonable conclusion.  Here, respectfully, the inferences relied on by the majority opinion are too inconclusive and speculative to carry Citizens' burden.  Although Citizens may harbor a *suspicion* based on these facts that Clark was a shill whose lawsuit was contrived, it has in my view failed to produce sufficient evidence as would support such a finding at trial.[4]

---

[2]  I may buy most of my clothing without looking at a tag to see where the item was made.  But if I splurge on an expensive suit or pair of shoes labeled "Made in Italy," it would hardly be fair to say I didn't care about *that* label.

[3]  By way of comparison, in a trade libel action by a clothing company against a nonprofit and its employee, the company demonstrated minimal merit to defeat an anti-SLAPP motion as to the distribution of allegedly defamatory flyers.  A videotape showed the employee participating in the protest with a stack of flyers and also depicted flyers in the hands of passerby.  Although there were no images of the employee actually handing out any leaflets, the evidence supported a reasonable inference that he distributed at least some of them.  (*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles* (2004) 117 Cal.App.4th 1138, 1149−1150.)  Recognizing that an inference may not rest on conjecture (*id.* at p. 1149), no such inference can reasonably be drawn here.

[4]  I focus here on the evidence credited by the majority.  However, I would draw the same conclusion as to other evidence relied on by Citizens, including Clark's response to the "paper airplane" line of questioning at her deposition and the fact that Clark's jeans bore an inner care label stating, "Made in the U.S.A. with imported fabrics."

7

B

After Clark withdrew as named plaintiff, Hass took her place. The majority conclude that Citizens established a likelihood that no reasonable attorney would have believed Hass's mislabeling claims were tenable. In other words, the evidence was sufficient to support a finding that both Haas and the Del Mar Attorneys knew Haas's claims were contrived. In reaching this conclusion, the majority emphasize the lack of evidence that Hass and the Del Mar Attorneys knew that (1) Hass purchased Ingrid-style jeans with a "Made-in-USA" label, or that (2) components of these jeans were imported.[5] Once again, I am unconvinced.

There is indeed uncertainty as to the label on the Ingrid jeans. Hass did not recall whether the label said, "Made in the U.S.A." or "Made in the U.S.A. with imported fabrics." There is no indication the Del Mar Attorneys inspected her jeans. And Gary Freedman, Citizens's general counsel, declared that the Ingrid jeans were never "solely" labeled "Made in the U.S.A."

But what inferences can reasonably be drawn from these facts? Hass alleged she purchased Ingrid-style jeans bearing a label indicating they were U.S.-made, and a lawyer may generally rely on information provided by a client. (*Daniels*, *supra*, 182 Cal.App.4th at p. 223.) The extent of attorney investigation is irrelevant to the question of probable cause. (*Sheldon*, *supra*, 47 Cal.3d at pp. 882–883.) Hass never alleged her

---

[5]    As with Clark, I focus on the evidence credited by the majority. But I would likewise not find a prima facie showing of probable cause based on inconsistencies as to when and where Hass bought her jeans or the circumstances in which she became involved in the underlying action.

jeans were "solely" labeled "Made in the U.S.A."  And I submit that Freedman's carefully worded declaration cannot be read to suggest the Ingrid jeans bore *only* a qualified label stating, "Made in the U.S.A. with imported fabrics."[6]  In short, Citizens did not produce evidence that would support a reasonable inference at trial that the Ingrid jeans were *not* labeled as "Made in the U.S.A." to serve as the basis for Hass's claims.

As the majority point out, we do not know whether the *Ingrid* jeans contained foreign components.  But Hass was stepping in as a new *named* plaintiff in an action that from the start broadly challenged how Citizens labeled its apparel.  By the time Hass became involved, Citizens had admitted mislabeling a different style of jeans.  Its refusal to allow discovery beyond the Boyfriend jeans that Clark bought precluded Hass and her counsel from knowing where components of other jeans were sourced.  Probable cause is lacking where an action is pursued without evidence sufficient to uphold a favorable judgment *or* without information supporting an inference that such evidence *can be obtained* for trial.  (*Daniels*, *supra*, 182 Cal.App.4th at p. 222.)  The fact that other

---

6      Freedman stated in his declaration:  "At no time has Citizens labeled its Ingrid-style jeans with labels that solely read 'Made in the U.S.A.'  At all relevant times, the labels on Citizens's Ingrid-style jeans have expressly stated that the jeans were made with imported fabrics."  Does this mean Citizens never used any "Made in the U.S.A." label on Ingrid jeans, or only that it never used such a label without some *other* label that disclosed the use of imported components?  It would have been a simple matter for Freedman to state, "In contrast to the labels on 'Boyfriend'-style jeans, the only labels ever used on 'Ingrid'-style jeans read:  'Made in the U.S.A. with imported fabrics.' "  He did not do so.  Moreover, the operative complaint alleged that Citizens used imported components *beyond* the fabric, including "thread, buttons, rivets, and/or certain subcomponents of the zipper assembly."

9

apparel was mislabeled could suggest to a reasonable attorney that the Ingrid jeans were too.

The theory of the underlying case was not all that complex. Both Clark and Hass alleged they purchased Citizens jeans that were labeled "Made-in-U.S.A." To the extent the jeans were made with any foreign components, that violated former section 17533.7 and gave rise to various causes of action. The question on an anti-SLAPP motion is whether Citizens proffered evidence that, if proven, would support a judgment in its favor. On the question of probable cause, that requires a finding that no reasonable attorney would have believed initiating an action on Clark's or Hass's behalf was tenable. Citizens simply does not meet its burden.[7]

---

[7]    Given its ruling, the majority do not consider the effect of the statutory amendment. Citizens filed its second amended complaint naming Hass as lead plaintiff five months after amended section 17533.7 took effect. (See Stats. 2015, ch. 238, § 1.) Invoking the rule of abatement, Citizens argues that no reasonable attorney would have continued prosecution beyond that point. (See *Younger v. Superior Court* (1978) 21 Cal.3d 102, 109; *Governing Board v. Mann* (1977) 18 Cal.3d 819, 829; see also *Brenton v. Metabolife Internat., Inc.* (2004) 116 Cal.App.4th 679, 690.) But this rule has exceptions. (See 3 Witkin, Cal. Procedure (5th ed. 2008), Actions, § 20, p. 84 ["if a statute does not wholly repeal but merely revises existing law, so that the statutory cause of action in modified form remains, no abatement occurs"], citing *Krause v. Rarity* (1930) 210 Cal. 644, 654−655.)
       California courts have yet to speak on the retroactivity question. And the fact that attorneys for plaintiffs in three other cases challenged retroactivity strongly supports the inference that reasonable attorneys believed the mislabeling claim remained objectively tenable despite amendment of section 17533.7. (See *Rossetti v. Stearn's Products, Inc.* (C.D. Cal. June 6, 2016, No. CV 16-1875-GW(Ssx)) 2016 U.S.Dist. Lexis 74163, pp. *12–*13; *Fitzpatrick v. Tyson Foods, Inc.* (E.D. Cal. Sept. 27, 2016, No. 2:16-cv-0058-JAM-EFB) 2016 U.S.Dist. Lexis 132797, pp. *9–*10, affd. (9th Cir. 2018) 714 Fed.Appx. 797; *Alaei v. Rockstar, Inc. et al.* (S.D. Cal. 2016) 224 F.Supp.3d 992, 998−999.)

# C

It is often said that malicious prosecution is a disfavored tort, whose elements are "carefully circumscribed." (*Sheldon*, *supra*, 47 Cal.3d at p. 872.) Thus "probable cause to bring an action does not depend on it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable." (*Wilson*, *supra*, 28 Cal.4th at p. 824.) This standard derives from the " 'reasonable attorney' " standard for frivolous appeals, not a " 'prudent attorney' " standard. (*Sheldon*, at p. 885.) "Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them." (*Wilson*, at p. 822.) " 'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win.' " (*Sheldon*, at p. 885.)

Defendants regularly complain of being forced to incur substantial expense to defend against meritless lawsuits. In most cases, we understandably balance the costs and benefits in favor of permitting plaintiffs their day in court. The costs of defense are the costs we accept for the ability to freely seek redress of grievances.

But the context of this case is very different, because permitting this malicious prosecution plaintiff its day in court will, I fear, do much to chill the ability of other plaintiffs in all types of cases to seek fair redress of their grievances. Even more troubling, in my view, is the chilling effect this may have on lawyers asked to represent them. Will attorneys now infer they would be advised not to represent family members

11

on something less than open-and-shut cases?  Or that a law firm should cease to represent a client after filing a few similar lawsuits on her behalf?  If a client becomes confused and performs poorly at a deposition, will a reasonable attorney feel compelled to jump ship?  And must an attorney direct a heightened level of scrutiny to information provided by a client before filing suit?

I hope these are not the inferences that are drawn by most lawyers.  No doubt they are not the inferences intended by the majority.  But if we learn nothing else from this case, we should certainly understand that the strength and reasonableness of inferences often lies in the eye of the beholder.

To be sure, today's holding simply permits a malicious prosecution action to move forward, without in any way suggesting Citizens will ultimately prevail.  But this is precisely the sort of harm the anti-SLAPP statute was designed to target and precisely the result the procedure is designed to forestall.  Based on Citizens's conduct, this case was "arguably meritorious" when it was filed.  (See *Wilson*, *supra*, 28 Cal.4th at p. 822.)  Although plaintiffs ultimately did not succeed when the law changed, I believe the anti-SLAPP procedure should have enabled them and their counsel to defeat this speculative malicious prosecution action at an early stage of litigation.


DATO, J.


12

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITIZENS OF HUMANITY, LLC, | D074790 |
| Plaintiff and Respondent, | (Super. Ct. No. 37-2018-00006337-CU-NP-CTL) |
| v. | |
| CONI HASS et al., | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendants and Appellants. | |

THE COURT:

The opinion in this case filed February 21, 2020, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties

2